# Barnett *et al. v.* The State.

*Indictment for emitting Change Bills.*

1. *Indictment ; when not liable to objection for uncertainty as to character in which defendants are charged, &c.*—An indictment which charges that the defendants, "being members or partners of a private company or corporation," known as the Tallassee Manufacturing Company, emitted, without authority of law, a certain paper to answer the purposes of money, &c., is not liable to the objection that it is uncertain whether the defendants are charged individually or as a private corporation ; it is a direct and unambiguous charge against them as individuals.

2. *Same ; when not objectionable as charging defendants disjunctively, &c.*—Such an indictment is not demurrable, on the ground that it charges the defendants disjunctively as members of a corporation or partnership ; whether they were the one or the other, or whether they were without any other con-

[Barnett et al. v. The State.]

nection or association than participation in the offense charged, their guilt and punishment are the same, and the allegation, being immaterial, is not ground for demurrer.

3. *Nolle prosequi of one of several counts of indictment; effect of.*—It is not ground of complaint that the court, after the evidence closed, entered an order of *nolle prosequi* as to one of the several counts of the indictment, against 'the defendants' objections ; the effect of the order was to work an acquittal as to that count, which is all that a verdict of not guilty could have effected.

4. *Variance; what immaterial.*—In a prosecution for emitting change bills, to circulate as money, (R. C. § 3643,) the difference between the word *cents* as written in the paper offered in evidence, and its abbreviation *cts.* as written in the indictment, is immaterial.

5. *Emitting change bills, &c., constituents of offense.*—It is the purpose for which paper is issued or circulated, and the absence of legal authority therefor, and not the character or form of such paper, which constitute the offense denounced by section 3643 of the Revised Code ; and although the form and contents of such paper may be evidence to establish or negative the criminal purpose, such unlawful intent is not inferred therefrom as matter of law, but is a question of fact for the determination of the jury ; and any description of the paper identifying it, is sufficient.

6. *Same; what competent evidence on trial for emitting or circulating change bills.*—Evidence that the paper circulated as money where it was issued, and was given and accepted in exchange for merchandise, or for marketable articles, is properly admitted on behalf of the State in a prosecution for this offense ; the evidence tends to show the adaptation of the paper to circulation and use as money.

7. *Same.*—A witness for the defense can not be permitted to state the purposes for which such paper was issued ; it is the province of the jury to determine that question from the evidence.

8. *Partners ; when guilty of circulating change bills, &c., issued by clerks.*—Although the several partners in a store, or members of a private corporation may not have known or assented to the original act of their clerk in making and issuing change bills, without authority of law, on the credit of the store, to circulate as money, &c., yet, if such paper is afterwards received and paid out by the clerk in their business, with their knowledge and assent, such subsequent use and emission is an offense, by all who concurred or participated in it; and the several partners are jointly and severally guilty, although they were not informed of such emission of the paper at the same instant of time, and did not jointly assent to it.

APPEAL from City Court of Montgomery.

Tried before Hon. JAMES Q. SMITH.

The appellants, Thomas M. Barnett, Nicholas D. Barnett and B. H. Micou, were indicted, under section 3643 of the Revised Code, at the fall term, 1873, of the circuit court of Elmore, for emitting change bills to circulate as money, and upon affidavit as to local prejudice, the trial was transferred to Montgomery county.

The indictment contained three counts. The first count charged that within twelve months before the finding of the indictment the defendants, (with others to the grand jury unknown), "being members or partners of a private company or corporation, known as the Tallassee Manufacturing Company, doing business at Tallassee in said county, caused or procured to be made, emitted, signed or countersigned,

[Barnett et al. v. The State.]

without authority of law, a certain partly written and partly printed paper, of which the following is a copy:

| | |
|---|---|
| 25. | TALLASSEE MANUFACTURING COMPANY STORE. |
| | Good for Twenty-five cents in Merchandise. |
| 25 cts. | W. O. NORVELL, Agent. |

*On the back*, 'W. M. Jordan,' to answer the purposes of money, or for general circulation, against the peace,' &c.

The second count was like the first, except that it charged that the defendants were "associated together for the sale of merchandise under the style and name of Tallassee Manufacturing Company Store, and caused or procured such paper to be made, emitted, signed or countersigned, without authority of law," &c. The third count, setting out a copy of the paper issued, charged that the defendants "passed and circulated in said State and county paper, issued without authority of law, to answer the purposes of money," &c.

The defendants demurred to the first and second counts on the grounds, among others, that "it was not set forth with sufficient certainty whether the defendants are charged as individuals or as a private corporation;" that the defendants "are charged in the disjunctive as members or partners of a private corporation or company, known as Tallassee Manufacturing Company; that the papers mentioned and set forth in the several counts was not sufficiently described, nor is it shown that it was capable of answering the purposes of money, or capable of general circulation."

The demurrers were overruled, and the defendants on issue joined on plea of not guilty, were convicted and fined.

The defendants reserved a bill of exceptions, from which it appears "that the charter of the Tallassee Manufacturing Company, number one, was read in evidence, (as printed in the acts of 1851 and 1852, p. 262), which it was agreed might be considered in the supreme court as though it were copied in the bill of exceptions."

It appeared from the evidence, "that a paper of similar description with that set forth in the indictment, had been issued by the clerks in a store at Tallassee, in Elmore county, within twelve months before the finding of the indictment, and that they varied in amount, being ten, fifteen, twenty-five and fifty cents, one, two, three and five dollars; that as much as three thousand dollars were signed by W. M. Norvell, and countersigned on the back by W. M. Jordan; but at no one time were more than three hundred dollars out, or in the hands of the community; that they were going in and coming

out at about that average; that said Norvell and Jordan issued said paper; that neither of the defendants at any time authorized or directed them to be issued."

It was further in evidence, that before they were issued, Jordan went to defendant, Micou, and told him what he was going to do about issuing them, and Micou assented; when the other defendants heard of it, they objected, but there "was no evidence that they took any active steps to stop their issuance, until after the finding of the indictment."

The business of the store was carried on in the name of Barnett, Micou & Co., and defendants had been partners under that name, but there was conflicting evidence as to whether the firm had been dissolved before any of the papers were issued. T. M. Barnett was present in the store, at various times, when papers similar to those described in the indictment were issued to various persons, but there was no evidence that he aided in their issuance, further than stated herein. Micou was president of the corporation, and T. M. Barnett a director therein, and all of the defendants were stockholders, and "the stores in which Jordan and Norvell were clerks, and the stores mentioned in said papers that were issued, belonged to the corporation, defendants having no other interest therein than as stockholders in the corporation."

The costs of printing the papers was paid by the store, and they were printed under Norvell's direction. The store accounts were kept separate from the corporation, and in the name of Barnett, Micou & Co.; and the paper issued employed as follows: "When an employee of the corporation, which was running a factory, wished to purchase from the store, he applied to Jordan for these papers, and Jordan, if desired, advanced them to the extent of such employe's monthly wages, and with them the employe bought what he wished, giving these papers in payment. Jordan kept an account of the papers thus advanced, charging them up against the employe's wages, and furnished the secretary and treasurer of the corporation with the amount thus advanced, and the corporation, after deducting them, would pay the balance of the wages in money." The two Barnetts were about the store occasionally, and knew that these papers were being thus used.

There was evidence that these tickets or papers were, in some instances, issued to country people, who desired to trade at the store, in exchange for butter and poultry, and they used the papers in buying goods at the store, and they were received in Tallassee in small amounts as money; but there was no evidence that either of the defendants knew

[Barnett et al. v. The State.]

of this. The defendants objected to the admission of the testimony, as to the circulation of the paper as money, and its exchange for poultry and marketable articles, but it was admitted against their objection and exception.

After the evidence was closed, the solicitor moved the court to enter a *nolle prosequi* to the third count of the indictment, and thereupon the court, against the objection of the defendants, caused the order to be entered, and defendants excepted.

The solicitor "having proved a paper described in the several counts, with the exception that the counts used the abreviation *cts.* when the papers offered in evidence read *cents,*" the defendants objected to its being read, because of such variance; but the court overruled the objection and permitted the paper to be introduced in evidence, and the defendants excepted.

During the progress of the trial, the defendants asked said Norvell, "what was the object or purpose of issuing the papers?" but, on objection of the solicitor, the court would not allow the witness to answer, and the defendants excepted.

The defendants severally and separately requested the following written charges:

"1. If there is no evidence before the jury tending to show that the Barnetts were in any manner connected with Micou in causing or procuring the making, emitting, signing, or countersigning of the paper charged in the indictment, before the said several acts were done, or any of them, then all three of the defendants must be acquitted.

"2. If the jury believe, from the evidence, that W. O. Norvell and W. M. Jordan made, emitted, signed and countersigned the papers charged in the indictment, and that they did these several acts as agents of the Tallassee Manufacturing Company Number One, and before said several acts or any or all of them were done, the fact that they would be so done was communicated to Micou, one of the defendants, but were unknown to the other defendants, and that said Micou consented that the said acts might be done, and they were subsequently so done, then all the defendants are entitled to an acquittal; notwithstanding the fact of knowledge of the fact that such paper was being used in the store of the Tallassee Manufacturing Company, and notwithstanding the fact that each of the defendants was a stockholder therein.

"3. If the jury believe, from the evidence, that said Norvell and Jordan, or either of them, had the papers prepared and signed, or countersigned them, and emitted them, as shown in the evidence, but did not do so by the direction or

[Barnett et al. v. The State.] ·

command of either of the defendants, then neither of the defendants can be convicted.

"4.   If the jury believe, from the evidence, that the only interest Micou had in the store was as stockholder in the factory, and it was a private corporation, and he took no part in having the papers prepared and issued, further than seeing they were in circulation, as the testimony has shown, then he can not be convicted.

"5.   If all the defendants did was to stand by and see the papers made, signed, emitted, or countersigned, and the only interest they had in the store was as members of the corporation, the Tallassee Manufacturing Company Number One, and the store belonged to this factory, the defendants can not be convicted."

The court refused to give either of these charges, and the defendants separately and severally excepted.

The overruling of the demurrer, the entry of *nol pros.* as to the third count, against the objection of the defendants, the refusal of the charges requested, and the other rulings to which exception was reserved, are now assigned as error.

D. T. BLAKEY, and ELMORE & GUNTER, for appellant.

JOHN W. A. SANFORD, Attorney General, *contra.*

BRICKELL, C. J.—The indictment contains three counts, the first charging that the defendants, being members or partners of a private corporation, caused or procured to be made, emitted, signed or countersigned, without authority of law, a paper to answer the purpose of money. The second charges, that the defendants were associated together for the sale of merchandize, and caused or procured the paper to be made, emitted, &c.   The third count charges the defendants with circulating paper, issued without authority of law, to answer the purposes of money. To the first and second counts a demurrer was interposed, on several grounds, and among others, because it is uncertain whether the defendants are charged individually, or as a private corporation, or as an association. The objection is not well taken; the indictment charges the defendants as individuals, and not as a corporation or association. The allegation that they were members or partners of a private corporation, or association, if it is not mere surplusage, serves only to point out the capacity in which they were acting in the commission of the offense—that they were engaged in transacting business as corporators, or as members of an association. That they were acting in that capacity does not relieve them from crim-

[Barnett et al. v. The State.]

inal liability, nor aggravate or mitigate the offense. If the corporation or association would be indictable for the offense, the defendants are charged as the immediate and active agents in its commission, and are also indictable. The indictment directly and without ambiguity charges them individually with the offense. If it had charged the corporation or association, it would have been by its corporate name.

Another ground of demurrer is, that the defendants are charged in the disjunctive, as members of a corporation, or of an association. The common law rule is; that the indictment must not state the offense in the *disjunctive*, so as to leave it uncertain what is really intended to be relied upon as the accusation. The rule is materially modified by our statutes, many of the forms of indictment prescribed alleging the offense disjunctively, and the statute providing generally that when the offense may be committed with different means or intents, such means or intents may be alleged in the same count in the alternative.—R. C. § 4123. The objection has generally been confined to the statement of the offense, and rested on the ground that it did not appear what particular offense the defendant was required to answer. That is not the objection now made—the offense, and the facts constituting it, are positively averred. The objection is, that it is averred the defendants were partners or corporators when they committed it. Whether they were the one or the other—or whether they were without any other association or connection, than participation in the offense charged, their guilt and punishment is the same. The allegation is, therefore, immaterial, and uncertainty in an immaterial allegation is not cause of demurrer.—1 Bish. Cr. Pro. § 592; *State v. Corrigan*, 24 Conn. 286.

The statute, under which the first and second counts are framed, declares, "any person, private corporation, or association, who makes, emits, signs or countersigns, or causes or procures to be made, emitted, signed or countersigned, without authority of law, any paper to answer the purposes of money, or for general circulation, must each, on conviction, be fined," &c.—R. C. § 3643. It is a general rule of criminal pleading, that if written instruments, or papers which may be written or printed, enter into the gist of the offense—if the offense consists in the making, utterance or publication of such instruments, they must be set out in words and figures in the indictment. The most frequent application of the rule is to indictments for forgery, libel, sending threatening letters, &c.—Whart. Am. Cr. Law, § 306. In these cases the offense depends wholly on the character of the instrument. The court can determine only from the instru-

ment, whether it is of the character of which forgery can be committed, or whether its matter falls within the legal definition of libellous; or whether the letter is within the statute punishing the offense. The character of the paper is not of the gist of this offense—whatever may be its character, if issued or circulated to answer the purposes of money, without authority of law, the offense is complete. It is the purpose for which it is issued or circulated, and the absence of legal authority for its issuance or circulation that constitutes the offense. If this is its purpose, its form, or its contents, is not material. If a particular form, or particular contents, were essential, the statute would be easy of evasion, and the community subject to all the evils it was designed to remedy. The form, or contents, may furnish evidence that the parties engaged in its emission or circulation, had not the criminal purpose. That is matter of fact to be determined by the jury. The purpose would not be inferred as matter of law, from the paper, whatever may be its form, or its contents.— *Bliss v. Anderson*, 31 Ala. 612. So the form or contents can not, as matter of law, negative the criminal purpose. The indictment should so describe the paper that the defendant will be informed of the facts relied on to constitute the offense and that he may be prepared to make his defense. The indictment in this case sets out a copy of the paper, and thereby fully informs the defendants and the court of the facts relied on as making the offense. It could not have been more particularly described. Any description identifying it, would have been sufficient.

We can not see that any injury could have resulted to the defendants from the entry of a *nolle prosequi*, as to the third count of the indictment, after the evidence was closed. It operated an acquittal on that count, all which could have been effected by a verdict of not guilty.—Whar. Am. Cr. Law, § 513.

The difference between the word *cents*, as written in the paper offered in evidence, and its abbreviations *cts.* as written in the indictment, is not material.

The essence of the offense is the issue, without authority of law, of paper for general circulation or to answer the purposes of money. The evidence that the paper was used as money—that it circulated as such where it was issued—that it was given and accepted in exchange for merchandize, or for marketable articles, was proper. It tended to show its adaptation to circulation and use as money. This was the effect of the evidence to which objection was made, and the objection was properly overruled. There was no error in refusing to permit the witness, Norvell, to state the purposes

for which the paper was issued. Whether it was issued for general circulation, or to answer the purposes of money, it was the province of the jury to determine from the evidence.

The several charges requested seem to be intended to present the question of the criminal liability of a principal for the wrongful act of an agent, or of a partner, for that of his associate; and the liability of the defendants to a joint indictment. A principal or a partner may be civilly liable in damages for the tort of his agent or associate, under facts which would not subject him to criminal responsibility. In a civil suit, the material inquiry is, whether the wrong was done while the agent was within the line of the duty with which he was charged, or the partner within the scope of the partnership. In criminal cases, it is the participation of the principal or partner in the wrongful act, either directly by concurring therein or by assenting thereto. If the principal or partner commands, procures or expresses assent that the wrong shall be done, before or at the time of its commission, criminal responsibility may be fixed upon him. The offense charged on the defendants may be complete by a single act, yet it is in its nature continuous and of frequent repetition. The command, procurement, or assent, may not have been given when the paper was first made, emitted or signed. Whenever the paper was put in circulation, or used as money, by their agents, it was a new making and a new emission. If at any time they assented to its emission by their agents, or to its use in their business, the paper being in effect a promise of payment by them, at the store in which they were partners, such assent fixes on them criminal liability. It is not necessary to inquire whether all of them would have been liable for the original making or emission—they are certainly liable for the subsequent emission and use. A retailer of spirituous liquors may not be liable, if his servant, in his absence, should, without his authority, sell to an habitual drunkard to-day—but if to-morrow the servant, in his presence and with his knowledge, makes such sale, he would be liable. In such case, it may be, he would not, under the authority of *Patterson v. State*, 21 Ala. 571, be liable for subsequent sales made by the clerk in his absence. Circumstances may have existed inducing him to sanction the particular sale, not existing at subsequent sales; and it may not be just to infer that because he has once assented to a criminal offense, he will or does assent to its repetition. The offense the statute is framed to punish, is the use and circulation of paper, unauthorized by law, as money. It is founded in the policy of keeping under the supervision and control of the law-

making power, that which is used as money—as a standard of value, or a medium of exchange—withdrawing its making, emission, or circulation, from the pursuits in which the citizen may engage, without being specially authorized by law. When paper is once issued as money, it can be issued only with the intent that it shall circulate, pass and repass by mere delivery from one to another—when issued to be used in a commercial business, that it shall be paid out and received in the usual course of business. If a principal, with a knowledge that his agent—or a partner, that his associate has made and circulated such paper, consents at one time to the issue or use thereof, it is a consent to its appropriation to the purpose for which it is intended, and to all subsequent emissions or uses of such paper, until he dissents and takes some active step to prevent its continuous use and emission. Though each emission or use may, of itself, constitute an offense, it must have been contemplated and assented to when consent was given to the appropriation of the paper to the uses of money. The charges requested, when applied as they must be to the evidence, do not assert correct legal propositions, so far as they refer to the liability of the appellants for the acts of their common agents, or for the acts of each other. There was evidence tending to show they were partners, and also stockholders in the corporation, in the business of which the paper was issued and used—that they knew of its use and took no steps to prevent it. If benefit resulted from its use, they were the recipients of it. These were facts from which the jury could properly have inferred their assent to the emission and use of the paper, though some of them may not have known of its original making or emission. The original making or emission may have been one offense which could be visited on the agents, who were the immediate actors in its commission, and the assenting partners. The subsequent emission and use is another, which may be visited on all who participated or concurred in it.

It is certainly true that several defendants may not be joined in the same indictment for several offenses, committed by them independently of each other. This is all that is asserted in the case of *Elliott v. State*, 26 Ala. 78, the authority to which appellants counsel have referred. It is the general rule of criminal practice, that defendants may be joined when the same evidence as to the act constituting the crime applies to each. The act constituting the offense is the making or emission of the paper for general circulation as money. The defendants bore to each other the relation of partners. They are jointly and severally guilty, though its

[Erwin v. Reese.]

making or emission may have come to their knowledge at different times. It is not essential they should have been informed of it at the same instant of time, or have jointly assented to it. When it came to the knowledge of each (and each assented) that the money was being emitted and used, they became jointly liable, as they would have been in a civil action. The same evidence as to the act, is applicable to all.

We find no error in the record, and the judgment is affirmed.