# Lowder *v.* The State.

### *Indictment for Burglary.*

1. *Breaking and entering.*—A servant, employed by an attorney in and about his office, and intrusted with the key to the front door, may be convicted of burglary (Code, § 4343), if he enters the office by night, by using the key, with the intention at the time of stealing the money of his employer while asleep in an inner room; but, if he is in the habit of sleeping in the office, with the consent of his employer, or without objection from him, and enters with the intention only of going to bed, but afterwards forms the design to steal the money, and attempts to do so, he is not guilty of burglary.

2. *Same.*—In this case, since "there was no evidence that the defendant had opened the door of the office at all, as there was none that it was shut before he entered," the court should have instructed the jury, on his request, that upon the evidence they must find him not guilty.

From the City Court of Montgomery.
Tried before the Hon. John A. Minnis.

[Lowder v. The State.]

The defendant in this case was indicted for burglary, in breaking and entering "the law-office of Sayre & Graves" in the city of Montgomery, with the intent to steal. The indictment also contained a count for the larceny of a pocket-book, the property of P. T. Sayre, containing bank bills, particularly described, of the aggregate value of forty dollars; but a demurrer was sustained to this count. Under the charge of the court, to which exceptions were duly reserved, the defendant was convicted of the burglary as charged. The bill of exceptions purports to set out all the evidence adduced on the trial; but, as the material facts are stated in the opinion of the court, it is not necessary to repeat them here.

J. GINDRAT WINTER, for the defendant, cited *Allen v. The State*, 40 Ala. 334; *Chambers v. The State*, 6 Ala. 855; East's P. C. 482; Clark's Manual, § 847; *Collier v. State*, 55 Ala. 125.

H. C. TOMPKINS, Attorney-General, for the State, cited *United States v. Bowen*, 4 Cr. C. C. 604; 1 Stra. 481; Hutton's R. 20; 2 Russell on Crimes, §§ 7–11; 2 Wharton's Amer. Cr. Law, § 1536.

MANNING, J.—Appellant was indicted for burglary, in entering at night, through the outer front door, the office of Sayre & Graves, attorneys-at-law, from which an open door let into an adjoining bed-room, where Mr. Sayre lay, having gone to bed. The evidence tended to show that defendant went from the office, after entering it, into the bed-room, to steal money from the pocket-book of Mr. Sayre, which he had placed between the mattresses of the bed on which he was lying. And the defense is, that being a servant of Sayre & Graves, and intrusted as such by them with the key of their office, defendant was not guilty of burglary.

According to Mr. Sayre's testimony, defendant was then, and previously, in the employment of Sayre & Graves "as a servant in witness' bed-room, and as an office boy to their law-office, the same mentioned in the indictment," and had received from them, to be used "for the purpose of his employment," a key to the office front door; and that he entered through said front door, and, by use and means of said key, defendant could have ingress into said office at will; but [his] duties . . . did not call him there at night," though he "was not restricted or forbidden from using said key, and coming into said office at night; nothing being said to him as to that." Whether or not he was in the habit of sleeping there at night, is left in doubt by the evidence.

[Lowder v. The State.]

In 2 Russell on Crimes, 7 (Sharswood's ed. of 1877), it is said: "It will also amount to a burglary, if a servant, in the night time, open the chamber door of his master or mistress, whether latched or otherwise fastened, and enter for the purpose of committing murder, or rape, or with any other felonious design." In *Edmonds's case*, in the time of James I. (Reports of Sir Richard Hutton, in black letter, p. 20), the jury returned this special verdict: "We find that Richard Heydon, and Christian, his wife, were both in bed, and at rest in an upper chamber of the mansion-house of the said Richard Heydon; and that the said William Edmonds then was, and yet is, the servant and apprentice of the said Richard; and that he then lay in another chamber of the said house, remote from the bed-chamber of his said master and dame; and that there was a door with a latch at the stairs-foot of the said bed-chamber of the said Heydon, but none at the stairs-head, being the entrance into the said bed-chamber of the said Heydon: We find that the said William, at the said time in the indictment, drew the latch of the stair-foot door, and opened the said door, being then latched, and went up the stairs, and entered the bed-chamber of his said master, with an intent to murder the said Heydon; and that he did then and there" wound, &c. Of the ten judges to whom the case was submitted, nine "agreed that it was burglary," and the other doubted. Similar to this are the cases of *Gray* (1 Strange, 481), and *Bowen* (4 Cranch Cir. C. 604), in which the judgments were the same.

In *Cornwall's case* (2 Strange, 881), "defendant was a servant in the house where the robbery was committed, and, in the night time, opened the street door, and let in the other prisoner, and showed him the side-board, from whence the other prisoner took the plate: then the defendant opened the door, and let him out, but did not go out with him, but went to bed." Whether this was burglary in the servant, was doubted at the trial; but, at a meeting of all the judges, they unanimously held, "that it was burglary in both, and not to be distinguished from the case that had been often ruled, . . . that if one watches at the street-end while the other goes in, it is burglary in all."

In this latter case, the servant did not break into and enter the house: he was already in, and did not go out; and the other did not himself do any house-breaking to get in: he only entered through a door, which a servant of the house, intrusted with the key, opened for him. But the idea, though not expressed, upon which this opinion was based, seems to have been, that the outsider was guilty of burglary in obtaining entrance by the aid of the unfaithful servant, as

(10)

truly as if it had been effected by an inanimate instrument; and it followed, that the servant was guilty of the same offense, because he was present, aiding and abetting. Would there have been any question made, whether the servant was guilty or not, if, instead of being and staying within the house, he had come with his confederate to the door, on the outside, and had opened it with the key intrusted to him, and both had gone in and stolen the plate? If not, why should not the servant, in view of the other cases above cited, be held guilty of burglary, if without a confederate he had opened and gone into the house alone, and immediately stolen the plate, himself? An opening for this purpose was no less unlawful, and it would appear as much a burglary, as an opening to let in another thief. By the common law, a servant would be guilty of larceny—of the felonious *taking* and carrying away—of the money or goods of his master, even if they had been handed and intrusted to him to be carried to another person, by appropriating them to his own use. And so, though he might have the privilege of opening and entering his master's mansion-house, to go to bed therein, he would, it seems to me, be guilty of burglary, if he unlocked and entered it in the night time, with the intent to rob, and did then commit robbery therein; only, to justify a conviction in such a case, the jury ought to be satisfied by the evidence, beyond a reasonable doubt, that the intent to rob existed when the house was entered, not formed afterwards.

Doubt is cast upon this view, by a passage of Sir Matthew Hale's, in commenting on some statutes of Elizabeth's reign, in which he says: "If the servant unlatch a door, or turn a key in a door in the house, and steal goods out of that room; . . . yet, it seems to me, the servant shall not thereupon be ousted of his clergy, for the opening the door in this manner is within his trust, and so no breaking of the house, nor robbery, within this act. . . . But, if a servant break open a door, whether outward or inward, . . and steal goods, this is a robbery and breaking the house within this statute; . . . for such a breaking, though by a servant, in the night, would make burglary; for such an opening is not within his trust."—2 Hale's P. C. 354, 355. Of these passages, it is remarked in Russell on Crimes (Sharswood's ed. of 1877), vol. II, p. 11: "It seems to have been considered, that the question whether such act would amount to a breaking, must depend upon the point, whether the door might have been opened by the servant in the course of his trust and employment." But doubt of this is intimated in a note, added with a *sed quœre*, and reference

[Tatum v. The State.]

to *Edmonds's case, supra.* We have, therefore, supposed we might consider the question as not settled by the passage in the Pleas of the Crown.

We are of the opinion, that the charge given by the judge of the City Court to the jury was, upon this point, as favorable to the appellant as the law would allow. Of course, if he went in only to go to bed, and had the right to do so from his employers, or was accustomed to sleep there at night with their knowledge, and without objection, he would not be guilty of burglary, though, after entering the office for that purpose only, he formed the design to steal.

The charge was asked for appellant, and refused, that upon the evidence they must find the defendant not guilty. And we think it ought to have been given. There was no evidence that defendant had opened the door of the office at all, for there was none that it was shut before he entered.

For the error of refusing this charge, the judgment of the Circuit Court must be reversed, and the cause be remanded. Let the defendant remain in custody, until discharged by due course of law.

