| 99 | 169 |
| 6137 | 28 |

# Hicks *v.* The State.

*Indictment for Burglary and Grand Larceny.*

1. *Defendant testifying for himself; cross-examining and impeaching.*—When the defendant in a criminal case elects to testify in his own behalf (Code, § 4473), he is subject to cross-examination like any other witness, and may be impeached by proof of contradictory statements previously made by him; and this principle extends to declarations or statements which have been excluded as evidence when offered as confessions, because not shown to have been made voluntarily.

2. *Possession of stolen goods; variance.*—The defendant being charged with the larceny of four ten-dollar gold coins, the prosecution may prove that, when arrested, the day after the larceny, he had in his possession a five-dollar coin, and that he handed to a companion a bag containing a ten-dollar coin and ten silver dollars. there being also evidence from w..ich the jury might infer that this money was procured in exchange or barter for that stolen.

3. *Same; abstract charge.*—A charge instructing the jury that "the mere possession of stolen goods, without other evidence of guilt, is not *prima facie* ev:dence of burglary," is properly refused. because abstract, when there is other evidence tending to show the defendant's guilt as charged.

4. *Same; charge invading province of jury.*—A charge instructing the jury that, "the money found on the defendant's person not being the money alleged to have been stolen. he is not required to account to the satisfaction of the jury for his possession of the money found on him at the time of his arrest," is properly refused. because invasive of the province of the jury, when there is evidence from which they may infer that some of the money was part of that stolen, and some of it procured in exchange or barter of the rest, and also other evidence of guilt.

FROM the Circuit Court of Blount.

Tried before the Hon. JOHN B. TALLY.

The indictment in this case charged, that Lit Hicks and Arthur Hale, with intent to steal, broke into and entered the dwelling-house of Mose Carter, and feloniously took and carried away four ten-dollar gold coins, the property of said Carter. A severance having been granted, Hicks was tried alone, was found guilty, and sentenced to the penitentiary for the term of four years. On the trial, Mose Carter testified, that the burglary was committed one Sunday night in September, 1892; that he went to his house on the afternoon of that day, in company with the defendant, and, having occasion to change his clothes, showed the defendant his money, which consisted of four ten-dollar gold coins;

that the defendant saw him put the money in a bag, which he placed in a box, put the box in his trunk, and locked it; that they left the house together, and when he returned the next morning he found the door open, the trunk broken open, and the money missing; that he reported the facts to the authorities at Walnut Grove, a few miles distant, and procured a warrant of arrest for the defendant and said Arthur Hale, who had gone from Walnut Grove in the direction of Guntersville. The evidence showed that the officers with the warrant of arrest, Herron and Phillips by name, overtook the defendant, in company with one Laughter and another, several miles from Walnut Grove, and ordered them to throw up their hands; that the defendant, "when he saw the officers coming, and about the time he was ordered to throw up his hands, put his hand in his pocket, took out a small bag, and handed it to Laughter, saying, 'Hold this for me';" that the bag contained one ten-dollar gold piece, and ten silver dollars; and that a five-dollar gold coin, with some small change, was found in the defendant's pocket when he was searched. The prosecution proved, also, that the defendant and Arthur Hale were seen going towards the house of Mose Carter on the night the burglary was committed; that on the morning of the arrest, before the officers overtook the defendant, he stopped at two houses on the road and asked to buy some small things, showing his money, and saying that he had made it by trading watches; and that he said to his companions, on the morning after the burglary, "say nothing about my carrying so much money." The State then introduced said Herron as a witness, one of the officers who made the arrest, and offered to prove by him a confession alleged to have been made to him by the defendant while under arrest, during the only conversation had between them; but the court excluded this evidence, on the ground that the confession was not shown to have been voluntarily made. The defendant then testified as a witness in his own behalf, admitting his possession of the money and the bag as above stated, and explaining how he had procured the money,—some of it at cards, some by swapping watches, and some by work done; and he denied that he was in the neighborhood of Mose Carter's house on the night of the burglary.

"On cross-examination of the defendant, the prosecution proceeded to lay a predicate for the purpose of impeaching him, by repeating to him the statements which he had made to Herron while under arrest, and asking him if he made such statements. In answer to these questions, the de-

fendant denied that he had made some of the alleged state-
ments, and admitted that he had made others, but said he
was induced to make them.   After the defendant had closed
his evidence, the prosecution recalled said Herron, and
asked him to state what the defendant had said to him in the
conversation between them while defendant was under
arrest.   The defendant objected to the witness testifying as
to anything said by defendant in said conversation, because
the court had held it inadmissible as evidence, when offered
as a confession, and because the same was illegal, irrelevant,
and immaterial." The court overruled the objection, and
allowed the witness to testify to the defendant's confessions
to him, to the effect that he watched while Arthur Hale
prized open the door of the house with an axe, and that he
afterwards broke open the trunk.   The defendant objected
and excepted to the admission of this evidence.

After the evidence was closed, the above being the sub-
stance of it, the defendant moved the court to exclude from
the jury all that was said about the money found in the de-
fendant's possession when he was arrested, and the money
in the bag handed to Laughter, on the ground that it was
not identified as the money charged to have been stolen;
and he excepted to the overruling of his motion.

The defendant requested the following charges in writing,
and duly excepted to their refusal: (1.) "The mere posses-
sion of stolen goods, without other evidence of guilt, is not
*prima facie* evidence of burglary." (2.) "The money found
on the defendant's person when arrested not being the money
alleged to have been stolen, he is not required to account to
the satisfaction of the jury for his possession of the money
found on him at the time of his arrest."

WM. L. MARTIN, Attorney-General, for the State, cited
*Clarke v. State,* 78 Ala. 474; 87 Ala. 71; *Norris v. State,* 87
Ala. 85; *Cotton v. State,* 87 Ala. 103; *Rains v. State,* 88 Ala.
91; *Mitchell v. State,* 94 Ala. 68; *Com. v. Tolliver,* 119 Mass.
312; *Malachi v. State,* 89 Ala. 134; 1 Greenl. Ev., § 34.

HEAD, J.—The question whether the accused, who makes
himself a witness in his own behalf, under the statute
authorizing him so to do, is subject to impeachment, as
other witnesses, by the introduction by the State, upon the
proper predicate therefor, of evidence of contradictory state-
ments previously made by him, is not an open one.   The
following authorities settle that he is subject to such im-
peachment: *Clarke v. State,* 78 Ala. 474; 87 Ala. 71; *Norris*

*v. State,* 87 Ala. 85; *Cotton v. State, 1b.* 103; *Rains v. State,* 88 Ala. 91; *Mitchell v. State,* 94 Ala. 68.

There was no error in the refusal of the court to exclude the evidence that a five-dollar gold-piece was found in defendant's pocket at the time of the arrest, and that defendant handed to Albert Laughter ten silver dollars at or about that time.   While these pieces of money were not the stolen coins, yet, in connection with the other evidence, his possession of them and .his conduct with reference to the silver dollars were circumstances proper to be considered by the jury, who might, under all the facts and circumstances shown in evidence, have legitimately inferred that he had exchanged the stolen coins, or some of them, for those found in his possession.   For the greater reason, was there no error in the motion to exclude the evidence that he handed to Laughter a ten-dollar gold-piece at or about the time of the arrest.   The stolen coins consisted of four ten-dollar gold-pieces.

The first charge requested by defendant was abstract. This is not a case dependent for conviction upon mere evidence of possession by the accused of the stolen property. There was other evidence tending to prove the defendant's guilt of the burglary and larceny.   The charge requested was, therefore, improper.

The second charge requested was also improper.   It assumes that none of the money found in defendant's possession was part of the stolen money.   It was for the jury to say whether the ten-dollar gold coin he had was one of those stolen.   Moreover, there was other evidence in the case besides the bare possession of the money, which had to be considered in determining whether defendant should satisfactorily account for that possession, and these were considerations for the jury.   The charge clearly invaded the province of the jury.

There is no error in the record, and the judgment is affirmed.