# Norman *v.* The State.

## *Burglary.*

(Decided June 8, 1915.   Rehearing denied June 30, 1915.
69 South. 362.)

1. *Appeal and Error; Harmless Error; Ruling on Pleading.*—Any error in ruling on demurrer to a count in an indictment was rendered harmless by a subsequent nolle prose of that count, although such nolle pros was not taken until the jury was empaneled and the trial entered upon.

2. *Same; Former Jeopardy.*—In such a matter, the time of the taking of the nolle pros affected only the question of former jeopardy in case the defendant should ever again be indicted for the offense there charged.

3. *Same; Harmless Error; Pleading.*—The court will not be put in error for overruling a demurrer, where such demurrer fails to point out the only defect there was in the indictment.

4. *Criminal Law; Verdict; Construction.*—Where an indictment contains two counts, a general verdict of guilty, not specifying the counts of the indictment under which it was rendered, was referable to the good count.

5. *Indictment and Information; Burglary; Sufficiency.*—An indictment which follows substantially form 27, and section 6415, Code 1907, is good as against demurrer.

[Norman v. The State.]

6. *Same; Formality.*—The omission of the words "against the peace and dignity of the state of Alabama" from a count, did not render the count demurrable where the indictment concluded with those words.  (Section 7131, Code 1907, section 170, Constitution 1901.)

7. *Burglary; Evidence; Possession.*—In the absence of an explanation as to how defendant came by them, the mere fact of defendant's possession of the original state examination papers shown to have been stolen, was sufficient to afford a reasonable inference that he had stolen them.

8. *Same; Requisites.*—While breaking or entering is essentially a condition of burglary, yet a breaking by unlocking instead of by battering down is a sufficient breaking under the statute.

9. *Same; Jury Question.*—Under the evidence in this case the question of breaking was one for the jury.

10. *Same.*—Where defendant was charged with having stolen unfinished state medical examination papers from an office in the state capitol, the failure of the state to examine each person having a key to the room to show by such that defendant did not obtain the papers through him as an accomplice, created no presumption of defendant's innocence, where the state had shown by those charged with the custody of the papers that they had been stolen.

11. *Same; Value.*—The fact that the papers stolen were not shown to have a market or pecuniary value, did not entitle defendant to a directed verdict.

12. *Accomplices; Corroboration; Sufficiency.*—Under section 7897, Code 1907, in a prosecution for burglary, testimony, even if that of an accomplice which connected defenndant with the commission of a crime, corroborated by one who witnessed the delivery of the stolen property to such accomplice, and by proof of defendant's possession of them after they were stolen, was sufficient.

13. *Burglary; Evidence; Corpus Delicti.*—The testimony of the state supervisor of the state examination, that the examination papers were stolen from the office of a certain named person in the state capitol at a certain time, together with proof showing defendant's possession of the papers said to have been stolen, was sufficient proof of the corpus delicti to carry that question to the jury.

14. *Same; Offense.*—If an applicant taking an examination for license to practice medicine, had any property in the examination papers, it terminated when he delivered them to the supervisor, together with his answers to the questions propounded; hence, the fact that he afterwards procured defendant to steal them and deliver them to him, was no such consent as to render defendant relieved from liability for the offense.

15. *Charge of Court; Pretermitting Evidence.*—Charges pretermitting a consideration by the jury of all the evidence may be refused without error.

16. *Same; Weight of Evidence.*—Charges calling for an expression of an opinion from the court as to what the evidence showed, are properly refused.

[Norman v. The State.]

17. *Burglary; Indictment; Place.*—Under section 6415, Code 1907, an averment that in the office burglarized, there were kept for use or deposit goods, books, things of value, was merely descriptive of the place broken into and entered, and was employed to show that it was a place which, under the statute, it would be burglary for any person to break or enter with intent to steal, and was not employed as a description of the things stolen or intended to be stolen.

APPEAL from Montgomery City Court.

Heard before Hon. C. P. McINTYRE.

George R. Norman was convicted of burglary, and he appeals. Affirmed. ·

J. H. McNEAL, for appellant.

W. L. MARTIN, Attorney General, and J. P. MUDD, Assistant Attorney General, for the State.

THOMAS, J.—(1, 2) The indictment contained three counts in burglary, but the last was eliminated by a nol. pros. taken by the solicitor with the consent of the court before the jury retired, which renders a consideration of the demurrers to it unnecessary, since any error the court may have committed in overruling such demurrer (*Kelly Adams v. State, infra,* 69 South. 357) was rendered harmless as a result of said nol. pros., even though the nol. pros. was not taken until the jury were impaneled and the trial entered upon; the time of the taking affecting only the question of former jeopardy in the event defendant should ever again be indicted for the offense there charged.—*Bartlett v. State,* 54 Ala. 579; 1 Mayf. Dig. 701, § 2, and cases cited; 12 Cyc. 268, 269.

(3) And while the first count of the indictment was defective for reasons as pointed out in *Kelly Adams v. State, supra,* where on demurrer we held bad a count which was in the same verbiage as said first count, except as to the name of the defendant, yet no ground of

the demurrer here filed to the count pointed out, as did the demurrer there filed, such defect; consequently the court cannot be put in error for overruling the demurrer here.—*Rich Oliveri v. State, infra,* 69 South. 359; *James v. State,* 53 Ala. 380; *Turk v. State,* 140 Ala. 112, 37 South. 234.

(4-6) The verdict of guilt returned by the jury was a general verdict, not specifying the count under which defendant was convicted; and under the evidence and pleading as they here appear, and where the jury was not required to specify as to which count its finding was had, and where the affirmative charge was not requested as to the separate counts, but only to the indictment as a whole, we will refer the verdict to the good count of the indictment (*Handy v. State,* 121 Ala. 12, 25 South. 1023, 1 Mayf. Dig. 865, § 3), count 2 thereof, which charged "that before the finding of the indictment [the defendant] George R. Norman, with intent to steal, broke into and entered the shop, warehouse, or other building of W. H. Sanders in which goods, merchandise, or books, things of value, were kept for use, sale, or deposit." The omission from this count of the conclusion, to wit, "against the peace and dignity of the state of Alabama," required by section 7131 of the Code and by section 170 of the Constitution of 1901 to be contained in indictments, did not render this count demurrable, since the indictment itself at its end contained such a conclusion.—*Harrison v. State,* 144 Ala. 20, 40 South. 568. The count was otherwise practically in code form and consequently free from defects.—Code, § 6415, § 7161, form 27; *Thomas v. State,* 97 Ala. 3, 12 South. 409; *Stone v. State,* 63 Ala. 115.

At the conclusion of the evidence the defendant requested, as said, the general affirmative charge, and here

[Norman v. The State.]

insists that he was entitled to it for several reasons, as will be hereinafter noted and considered.

The evidence for the state, so far as is sufficient to that consideration, tended, among other things, to show: That one Avery, who was an applicant for examination to practice medicine as provided for in sections 1626 to 1646, inclusive, of the Code, came to Montgomery, where at the time (January 5 to 8, 1915, inclusive) the examination of such applicants was being conducted in pursuance of the requirements of such statute, for the purpose of standing such examination; that on Thursday afternoon of January 7, 1915, he took the chemistry examination, and that late that afternoon, upon the completion of his written answers to the questions propounded on this subject, he turned them in to the supervisor of the examination, who, putting them in a box with the other examination papers, placed the box with its contents at the State Capitol in the office of Dr. W. H. Sanders, the state health officer, for safe-keeping until after the conclusion of the examinations on Friday evening, January 8, 1915, when the papers were to be sent off out of the city on the following day to the examiners in other parts of the state for passing upon and grading; that the office of Dr. Sanders, the head of the state health department, where the papers were so placed for safe-keeping, was, when open, continuously occupied, and that when closed it was always locked, and to which no one had a key except Dr. Sanders and his assistants, who were Drs. Perry and Dinsmore— the latter being the supervisor mentioned—and except Kelly Adams, the servant; that the said Avery, the applicant, after turning in to the supervisor late Thursday afternoon, or evening, as said, said chemistry examination papers, went from the Capitol, where he had

been standing the examination, downtown, where he saw at a hotel the defendant here, Dr. Norman, whom he had known for some time, and who several years before had stood the examination to practice medicine and had received a license to do so, and who had come from his home in North Alabama, where he was so practicing and was in Montgomery during the week of the present examinations, but who had no connection, official or otherwise, with such examination; that the applicant, said Avery, besought the defendant, said Norman, who, Avery for some reason surmised, would for a consideration furnish assistance to applicants, to know for what price he (defendant) would aid him (said Avery) on one examination, the chemistry examination referred to; that, after some parleying as to price, defendant finally guaranteed that for $75 he would so arrange it that said Avery would pass his chemistry examination, whereupon Avery paid defendant $50 of the amount, and the latter, who, it seems, was in possession of a copy of the question that had been propounded on the chemistry examination, and which he had obtained in some way which does not appear, then furnished Avery the answers to the questions, and required Avery to there copy in his own hand such answers, which Avery then and there did, to wit, said Thursday night in defendant's room, upon completion whereof he (Avery) delivered such copy of the answers to defendant, who promised to see to it that this copy, in Avery's handwriting, would be substituted for and put in place of, before they were sent off for grading, the answers heretofore mentioned, which, as before said, Avery had written up at the time of taking the chemistry examination that afternoon, and which, at the conclusion thereof, he had, as said, turned over to the supervisor as the former's

answers to the questions on chemistry, and which answers had that evening or night been placed by the supervisor in the office of Dr. Sanders as aforesaid; that defendant further promised that after the substitution had been accomplished as agreed he would deliver to Avery his original answers—those last mentioned—and Avery promised that upon such delivery he would then pay defendant $25, the last installment of the $75 consideration agreed on; that on the following night (Friday night) defendant delivered to Avery in the base-ment of the Exchange Hotel said originals, and then and there received from Avery said $25.

(7-9) How did defendant come into the possession of these originals? Being, as they were shown by the evidence for the state to be, stolen property, the mere fact of defendant's possession of them, aside from other mentioned incriminating evidence against him, was sufficient, in the absence, as here, of any explanation on his part as to how he came by that possession, to afford a reasonable inference that he had stolen them from the office of Dr. Sanders (*Hicks v. State*, 99 Ala. 169, 13 South. 375; *Fuller v. State*, 48 Ala. 273) ; 1 Mayf. Dig. 138, § 16) ; but whether by breaking into and entering said office, which is the sole charge here (burglary), a belief of which breaking and entering was essential to defendant's conviction, or whether by entering said office without a breaking, which would make defendant guilty of only petit larceny, is the serious question in the case, though we are of opinion that the evidence was sufficient in its inference to require a submission of the question of the breaking to the jury, and to forbid the giving of the affirmative charge for defendant.

It is true that there is no evidence whatever of an actual or violent breaking, and consequently true that, if

there was a breaking, it was a breaking by unlocking, rather than by battering open, the door to the office; yet such a breaking is entirely sufficient to constitute a "breaking" within the contemplation of the law in defining burglary.—6 Cyc. 178 et seq.; 1 Mayf. Dig. 134, § 12.

It is further true that certain phases of the evidence afford such latitude as to the time of the taking as not to more definitely fix such time than that inferentially it must have occurred some time between Thursday night, when defendant agreed with Avery to get said papers, and Friday night following, when defendant delivered said papers to Avery, thereby, without more, leaving perhaps as strong room for an inference that defendant stealthily took said papers from the office of Dr. Sanders during the day of Friday at a time when such office was open and without breaking therein, as for an inference that he took them on the Thursday night before, and after said office had been closed, and by breaking into it by unlocking it with a key; yet the further fact, which also appears in evidence, that at all times when said office was open there was always some one of those who had charge of it in there, is a strong circumstance tending to rebut, in connection with other circumstances, the idea that the papers were taken from that office during the time that it was open, and tending to show that they were taken by breaking into said office when it was closed, and was sufficient, therefore, with such other circumstances, to authorize the court to submit to the jury the question as to whether or not defendant broke into and entered said office. —*Pantaze v. West,* 7 Ala. App. 599, 61 South. 42.

Under the evidence, the inference that defendant obtained the papers by breaking into the office when it

was closed is certainly stronger than the inference that he obtained them when the office was open, because it was shown, not only that the office was at all times occupied when open, but also that the papers were on the table in a box with all the other examination papers. It is hardly probable that defendant could have fished these papers out of the box among the many with which it was commingled, and have substituted another in its place, without attracting the attention of the occupants of the office. It is more probable that he entered the office by unlocking it; there being evidence that the lock to the office was a cheap one and easy to fit with a key.

Of course, if there had been any evidence tending to connect Kelly Adams, the servant, who had a key to the office and a right to enter with such key at any time during the day, with the commission of the offense, and to show that the defendant procured the papers through Kelly Adams, as his accomplice, or through any other person authorized to enter such office, then in such case also the inference that the papers were obtained at a time when the person obtaining them had a right to enter the office would perhaps be as strong or stronger than the inference that they were obtained at a time when he did not have a right to enter or were obtained by breaking into said office. In such an event defendant, whose guilt is by the law measured by the guilt of his accomplice who actually perpetrated the crime, would have probably been entitled to the affirmative charge under this indictment for burglary, because his accomplice could not under the law be guilty of burglary if such accomplice took the papers at a time when he had a right to enter the office, although he would be guilty of larceny, as, consequently, would defendant

in such event.—6 Cyc. 180; *Lowder's Case,* 63 Ala. 143, 35 Am. Rep. 19. Here, however, there is no evidence whatever that defendant had such an accomplice; and certainly we are not required to presume, in the absence of such evidence, that defendant did have such an accomplice, in order to permit defendant to escape the incriminating features of the evidence as to the breaking, for such a presumption would amount to presuming another person's guilt, of which there is no evidence, for the purpose of explaining away the inculpatory evidence against defendant of the burglary.

(10) Nor did the failure of the state to examine each person shown to have had a key to the office and to show by each of them severally that defendant did not obtain the papers through him as an accomplice create any presumption favorable on this score to the innocence of defendant, when it appears that the state did show by those who were charged with the custody and keeping of said papers that they had been stolen.—*White v. State,* 72 Ala. 195.

(11) There is likewise no merit in the contention that defendant was entitled to the affirmative charge because it was not shown that the papers stolen had a market or pecuniary value.—*Jackson v. State,* 69 Ala. 252; *Rose v. State,* 117 Ala. 77, 23 South. 638.

(12) And while it is true that a conviction of a felony cannot be had upon the testimony of an accomplice, unless corroborated by other evidence tending to connect defendant with the commission of the offense (Code, § 7897), yet, even if we assume that Avery was an accomplice of defendant, which Avery denies—Avery claiming that his purpose in conspiring with defendant was, not to induce the stealing of the papers, but to catch up with defendant, whom he had suspicioned as aiding

unlawfully applicants for examination—still Avery's testimony connecting defendant with the commission of the crime here charged was corroborated both by Haygood, who, unknown to defendant, witnessed the receipt by Avery of the papers from defendant, and who heard part of the incriminating conversation between them, and also by the fact of defendant's possession of the stolen property, and also by numerous other circumstances in the case.—*McDaniels v. State,* 162 Ala. 25, 5 South. 324; *Malachi v. State,* 89 Ala. 134, 8 South. 104.

(13) Dr. Dinsmore, the supervisor, testified that the papers were stolen from the office of Dr. Sanders at some time between Thursday night and Saturday morning. This, with the other evidence detailed, sufficiently showed circumstantially the corpus delicti.

(14) The contention of the defendant that these original answers were the property of Avery, and that, since they were stolen with his consent and by his procurement, defendant could not be guilty, is so palpably without merit as not to require discussion. Avery's property in them and right to them, if he ever had any, terminated when he delivered them to the supervisor as his answers to the questions propounded in chemistry.— Code, §§ 1626-1646.

(15) Charges 31 and 32 refused to defendant were each faulty, in that each pretermitted a consideration by the jury of all the evidence.—*Pate v. State,* 150 Ala. 17, 43 South. 343.

Charges 88, 94, 95, and 96 were properly refused because not stating, as before pointed out, the law.—*Jackson v. State,* 69 Ala. 252; *Rose v. State,* 117 Ala. 77, 23 South. 638.

(16) Charges 90 and 91 were each properly refused because, besides other reasons, each called upon the

court to say what the law does not in any case require the court to say, and that is as to what the evidence shows.

(17) Charge 97 was likewise properly refused. The averment in the indictment that in the office or building burglarized were kept for use, sale, or deposit "goods, merchandise, or books, things of value" was merely descriptive of the place broken into and entered, and was employed for the purpose of showing that such place was one of a character that under the statute it would be burglary for any person to break into with the intent to steal, and was not employed as a description of the things stolen or intended to be stolen.—Code, § 6415, and cases there cited; 1 Mayf. Dig. 131.

We find no error in the record, and the judgment of conviction is affirmed.

Affirmed.