# Martin v. The State.

*Indictment for Grand Larceny and Receiving Stolen Property.*

1. *Evidence of condition of defendant and his family; when admissible in trial for larceny and receiving stolen property.*—On the trial of a man and his wife under an indictment charging them with the larceny of a large sum of money, and with receiving said sum of money, knowing it was stolen, not having the intent to restore it to the owner, evidence tending to show that shortly after the alleged larceny there was a marked change in the condition of defendants' family, in their mode of living, style of dressing, in spending more money than they were accustomed to spend, and that they ceased to rent a house to live in and built them a dwelling, in connection with evidence tending to show the wife guilty of the larceny and the husband guilty of receiving a part of the money, knowing it to have been stolen, as charged, is admissible.

2. *When evidence of defendant's habits of frugality admissible.*—In such a case, when the evidence for defendants tends to show the husband had, previous to the time of the alleged larceny, acquired the money with which to make such changes in their condition and lives by industry and frugality, evidence that said defendant was not industrious, did not work half his time, but was an idle spendthrift, is admissible, as tending to rebut the inference to be drawn from defendants' evidence.

3. *Evidence of gambling on a trial for larceny.*—On a trial under an indictment charging defendant with larceny of money and with receiving stolen money, having no intent to return it to the owner, evidence that defendant gambled is irrevelent to any issue involved, is therefore inadmissible, and its admission is error.

4. *Cross-examination ; place prosecutor keeps his money irrelevant.*—
While great latitude is allowed on cross-examination, it must be con-
fined to facts relevant to the issue involved in the case; and in a trial
under an indictment for larceny of money and for receiving such
stolen money, having no intention to return it to the owner, the place
where the person from whom the money was stolen kept her money,
is irrevelant and immaterial, and a question, on cross-examination,
eliciting such information, is properly disallowed.

5. *Charge of court to jury; recent possession of stolen property.*—Re-
cent, unexplained possession of stolen property, raises a presumption
of guilt; and where, on a trial under an indictment for receiving money,
knowing it was stolen, and having no intention of returning it to the
owner, the evidence tends to show that the larceny was committed by
another, but the defendant had possession of a part of the stolen
money shortly after its larceny, a charge which instructs the jury
that the fact that the defendant "had in his possession a portion of
the money alleged to have been the property of Mrs. M. [the person
from whom it was stolen] raises no presumption that he received it
knowing it to be stolen—if it was stolen," is properly refused, because
it does not assert a correct proposition of law, and is also mis-
leading.

6. *Same; giving undue importance to written charges.*—A charge which
instructs the jury "that it is their duty to carefully read and consid-
er these written charges, and that in weighing the testimony they
should apply the law as set forth in the written charges, as well as
that in the oral charge of the court," is properly refused as giving un-
due importance to the written charges.

APPEAL from the City Court of Mobile.

Tried before the Hon. O. J. SEMMES.

The appellant was indicted jointly with his wife, Julia
Martin, for the larceny of $600, and for receiving $600,
knowing it was stolen, and not having the intent to re-
store it to the owner.　On the trial of the defendants
jointly, the said Julia Martin was convicted of the lar-
ceny, and the appellant in this case was convicted of re-
ceiving the money, knowing it to be stolen.

The evidence for the State tended to show that Julia
Martin, the co-defendant of the appellant, his wife, stole
from Mr. and Mrs. Thomas McDonald $600 in gold, and
that this defendant received from his said wife $80 of
said money, knowing it to be stolen. The evidence for the
State further tended to show that shortly after the alleged
theft, the defendant, Reuben Martin, spent about $300
in the purchase of a lot, for building material, and for
carpenter's work in the erection of a house on said lot.

[Martin v. The State.]

The evidence for the defendants tended to show that the husband had worked and earned during the year previous to the theft $200 ; that his brother-in-law had sent him $70, and that his wife had borrowed $100 in gold from Mrs. McDonald.

Mr. Thomas McDonald, one of the parties from whom the money was alleged to have been stolen, being examined as a witness for the State, was asked : " Do you know whether or not the defendants apparently had any means before the time this money is alleged to have been stolen?" The defendants objected to this testimony, on the ground that it called for immaterial and irrevelant evidence, and duly excepted to the court's overruling their objection. The witness answered : " Before said time they apparantly had no means." The defendants moved to exclude this answer, and duly excepted to the court's overruling their motion. The same witness was asked the following question : "Did defendants, before this money is alleged to have been stolen, rent a place?" To which question he answered : " They lived in a place where a man had died." This same witness was also asked : " Whether or not shortly after this money was taken defendants had built a house?" and he answered : " That they had." The defendants separately objected to each of these questions, and moved to exclude each of the answers to the respective questions, and separately excepted to the court's overruling each of their several objections and motions.

Upon the examination of Thomas McDonald, Jr., as a witness for the State, he was asked : " Was there any apparent difference in defendants' living before and after December 28, 1893 [the day the money was alleged to have been stolen] ?" The defendants objected to this question, on the ground of irrevelancy and immateriality, and duly excepted to the court's overruling their objection. The witness answered : " That there was; that the children dressed better, and defendants seemed to have more money to spend." The defendants objected to this answer, and duly excepted to the court's overruling their objection.

On the examination of Ephraim Matthews, a witness for the State, and after he had testified that he was a carpenter and had been one for several years, he was asked by the solicitor : " If he had not, in last January,

built a house for the defendants?'' The defendants objected to this question, on the grounds that it called for immaterial and irrevelant evidence, and, their objections being overruled, they duly excepted. The witness answered: ''That he did.'' The defendants moved to exclude this answer, and duly excepted to the court's overruling their motion.

Upon the examination of Mrs. McDonald as a witness, and after she had testified that she had money of her own, the defendant asked her, on cross-examination: ''Where did you keep the money that belonged to yourself?'' The solicitor objected to this question, and his objection being sustained, the defendants duly excepted.

Frank Annan, a witness for the State on rebuttal, was asked: ''What are Reuben's habits; is he a sober, industrious man, or an idle spendthrift?'' The defendants objected to this question, on the ground that said defendant's character was not in issue, and that it was immaterial what his habits were. The solicitor stated that ''the question was not for the purpose of attacking defendant's character, but for the purpose of rebutting the inference raised by evidence for defendant, that he had saved up this money he had spent, by showing he was not a steady worker, but a drinker and a gambler.'' The court overruled the defendant's objection, and they duly excepted. The witness in answer to this question stated, ''that the defendant was not a steady worker, that he did not think he worked one-half of his time.'' The defendants moved to exclude this answer, and duly excepted to the court's overruling their motion. This same witness was asked the following question: ''Have you or not seen the defendant, Reuben Martin, gambling during the last year?'' The defendants objected to this question as being immaterial, and duly excepted to the court's overruling their objection. The witness answered: ''That he had seen the defendant gambling, but he did not know whether he would lose or win— whether he was a successful gambler or not.'' The defendants moved to exclude this answer from the jury, and duly excepted to the court's overruling their motion.

The defendants asked the court to give the following written charges to the jury, and separately excepted to the court's refusal to give each of them: (1.) ''The fact that Reuben Martin had in his possession a portion

[Martin v. The State.]

of the money alleged to have been the property of Mrs.
McDonald, raises no presumption that he received it
knowing it to be stolen—if it was stolen." (2.) "The
court charges the jury that it is their duty to carefully
read and consider these written charges, and that in
weighing the testimony they should apply the law as
set forth in the written charges, as well as that in the
oral charge of the court."

JOHN E. MITCHELL, for appellant.—While it is true that
the unexplained recent possession of stolen property,
raises the presumption of the possessor's guilt of the
theft, such presumption is not extended to acts of re-
ceiving stolen property. Recent possession of stolen
property raises no presumption that the possessor knew
that the property was stolen.—Clark's Manual Cr. Law,
§ § 1035, 1039; Roscoe's Cr. Ev., (Ed. of 1866), 817;
State v. Buila; 89 Mo. 595, 1 S. W. Rep. 764; Reg. v.
Dansley, 6 C. & P. 399; State v. Humason, 5 Wash. St.
499, 32 Pac. Rep. 111; Durant's Case, 13 Mich. 351;
Reg. v. Pratt, 4 F. & F. 315; 20 Amer. & Eng. Encyc. of
Law, 455, n.

WILLIAM L. MARTIN, Attorney-General, for the State.—
The evidence tending to show that there was a sudden
change in the condition of the defendant's family shortly
after the larceny as tending, together with the other
evidence in the case, to connect him with the crime for
which he was indicted, was admissible. Heckett v. King,
90 Mass. 144; 85 Amer. Dec. 695; 12 Amer. & Eng.
Encyc. of Law, 843, 844.

The court did not err in permitting the State to show
in rebuttal of the defendant's testimony, to the effect that
he had saved his money, that his habits were those of a
spenthrift and gambler.—2 Bish. Crim. Procedure, §
748.

Under the indictment for receiving stolen property,
not having the intention to restore it to the owner,
where there is evidence tending to show that some other
person stole the property, the recent unexplained pos-
session of the property raises the presumption of the
defendant's guilt by receiving the property knowing it
was stolen, and without the intention to return it to the
owner.—Cooper v. State, 87 Ala. 135; Malachi v. State,

[Martin v. The State.]

89 Ala. 134; *Sheppard v. State*, 94 Ala. 102; *Sartorious v. State*, 24 Miss. 602; *Frank v. State*, 67 Miss. 125; *Goldstein v. People*, 82 N. Y. 231; *Reg. v. Langmead*, 9 Cox. C. C. 464; *Reg. v. McMahon*, 13 Cox. C. C. 275; Whar. Cr. Ev., § 758.

BRICKELL, C. J.—1. The condition of the defendant and his family, whatever it may have been, prior or subsequent to the larceny, unconnected with other evidence, would not have been relevant and admissible; from that condition, as a separate, distinct fact, no reasonable presumption or inference could be drawn as to his guilt or innocence.—2 Bish. Crim. Proc., §748. The larceny, that the money of the prosecutor had been stolen, there was evidence tending to prove. There was also evidence having a tendency to fix upon the wife of the defendant, the stealing of the money, which was a considerable sum, and to fix upon the defendant, the guilt of receiving a part of it, knowing it to have been stolen. The evidence introduced against the objection of the defendant, tended to show that, soon after the larceny, there was a marked change in the condition of his family, in their mode and style of living, the expenditure of more money than they had been accustomed to expend, and that from living upon rented premises, he had erected or was engaged in the erection of a dwelling house, and its cost. We think the evidence was clearly admissible; such a change of condition is at all times a fact of significance; within the circle of acquaintance, it attracts attention, and invites more or less of remarks, and of inquiry, as to the causes from which it may proceed. If the change of condition is sudden, it is usually accompanied with a sudden improvement of fortune. It is said in Burrill on Criminal Ev., 457: "In most cases, the fruits of the crime themselves are so well concealed from view by the perpetrator, as to permit no immediate evidence against him. There is nothing visible in his possession, which can be directly traced to or connected with the offense. But they sometimes betray themselves by their *consequences*, as by a sudden and material *change in life* or circumstances, indicating, beyond question, the recent receipt of money or property from some quarter. Where a person, previously known to be poor, is found shortly after a robbery, larceny or murder, in the posses-

[Martin v. The State.]

sion of considerable wealth, it is always a circumstance of suspicion ; and, when corroborated by others, of material weight in connecting the crime with its perpetrator." And upon authority it seems well settled that such change of condition and circumstances, is a fact proper to be submitted to the jury in connection with the other evidence, and may raise a presumption of guilt.—*Com. v. Montgomery*,—11 Met. 534, s. c 45 Am. Dec. 227; *State v. Grebe*, 17 Kansas, 458 ; *State v. Bruse*, 106 N. C. 792; *Perin v. State*, 52 N. W. Rep. 526. The fact is open to explanation, and all unfavorable inferences arising from it may be removed by tracing the change to any source consistent with the hypothesis of innocence.

2. We deem the evidence touching the defendant's habits, or want of habits, of industry, relevant and admissible. If he was not a steady worker, and did not work half his time, any inference or probability that he acquired by his labor the money, there was evidence tending to trace to his possession, was lessened.

3. There was error in the admission of the evidence referring to the defendant's gambling. When the gambling occurred, whether prior or subsequent to the commission of the offense with which he is charged, what was its character, whether it was a single instance, or there were repetitions of it, was not shown. If all these facts had been shown, the fact of his gambling was incapable of affording any reasonable inference or presumption as to any material fact or inquiry involved in the issue of his guilt or innocence.—*Brock v. State*, 26 Ala. 104; Whart. Criminal Ev., § 29.

4. The examination in chief and the cross-examination must be confined to matters relevant to the issue. True, on cross-examination, it may be proper to elicit any and all facts showing "the situation of the witness with respect to the parties and to the subject of the litigation, his interest, his motives, his inclinations and prejudices, his means of obtaining a correct and certain knowlege of the facts to which he bears testimony, the manner in which he has used these means, his powers of discernment, memory, and description."—1 Greenl. Ev., § 446. In this respect there may be a greater latitude of interrogation than on the examination in chief. The cross-examination must nevertheless be confined to facts relevant the issue—facts irrelevant and immaterial cannot

be the matter of the examination.—*Stoudenmeier v. Williamson*, 29 Ala. 558. Where Mrs. McDonald kept her money was wholly irrelevant and immaterial, and there was no error·in refusing to permit the inquiry to be made of her. If the interrogation had been permitted, the answer of the witness would not have been capable of contradiction. For the rule is well settled, that if a question, which is collateral or irrelevant to the issue, is put to a witness, his answer cannot be contradicted by the party asking the question.—1 Greenl. Ev., § 449; *Blakey v. Blakey*, 33 Ala. 611.

5. The first charge requested by the defendant was properly refused. It is of doubtful meaning, and without explanation had a direct tendency to mislead and confuse the jury; besides it invaded the exclusive province of the jury, to determine the weight of the evidence. If it were not obnoxious to these objections in view of the evidence, it does not assert a correct legal proposition. It is the settled law of this State, that the recent possession of stolen goods, imposes on the possessor the *onus* of explaining the possession; and, if he fails to make a reasonable explanation, raises a presumption of guilt, which will support a verdict of conviction. *Cooper v. State*, 87 Ala. 135; *Malachi v. State*, 89 Ala. 134. If there was evidence tending to connect the defendant with the larceny, the recent, unexplained possession of the goods, it may be, would raise the presumption that he had stolen them, rather than that he had received them knowing them to have been stolen. But where the evidence, though proving the larceny, does not connect him with its commission, tending to fix the guilt of it upon another, and he has the recent possession of the goods. if he makes no reasonable explanation of the possession, the same presumption should be applied, which would be applied if the possession had remained with the first taker. There is no unfairness in the presumption; it is reasonable. The receiver can as readily explain how and from whom he acquired possession, as could the first taker; the explanation which would be reasonable, removing the presumption in the one case, would have the same effect in the other. In either case, the presumption grows weaker as the time of possession recedes from the time of the original taking.—*Goldstein*

[Bell v. The State.]

*v. People*, 82 N. Y. 231; *People v. Weldon*, 111 N. Y. 569.

6. The second charge requested was properly refused. The instructions of the court to the jury are not fragmentary. The charge given by the court, *ex mero motu*, and the charges which may be given on request are an entirety, and must be so taken and construed. Under the statute, charges given on request must be in writing; and if from any cause the court apprehends that the jury might disconnect and attach more of importance to them, than to the other instructions, it is the duty of the court to say to the jury, that they are to be considered in connection with the oral charge, as constituting the law of the case. The duty of the jury in this respect is so obvious, so well known, that whether such an instruction shall be given in a particular case, must rest largely in the discretion of the trial court, and the refusal of the instruction must be a glaring breach of the duty of the court, and of prejudice to the one party or the other, before an appellate tribunal would interfere with its exercise. The instruction requested had an immediate tendency to impress the jury, with the thought, that more of importance should be given the charges in writing than was given the oral charge; it had the like tendency to break the charge into fragments, dissociating its several parts, which should have been regarded as an entirety, constituting the law of the case.

For the error pointed out, the judgment must be reversed and the cause remanded; the defendant will remain in custody until discharged by due course of law.

Reversed and remanded.

