# Martin *v.* The State.

### *Indictment for Murder.*

1. *When one of two defendants jointly indicted testifies in the case against the other defendant not entitled to be discharged.* Where two defendants are jointly indicted for murder, and on a severance one of the defendants being called by the State

[Martin v. The State.]

as a witness, voluntarily testifies to the circumstances of the killing without any promise or inducements being made to him, such defendant, after having so testified, is not, by reason' thereof, entitled to his discharge when his trial is called.

2. *Conspirator; liability of each for act of the other.*—If two or more persons conspire to do an unlawful act, and in the prosecution of a common object another person is killed, they are all alike guilty of the homicide, since each is responsible for everything done which follows incidentally in the execution of the common unlawful purpose as one of its probable and natural consequences, even though such act was not intended or within the reasonable contemplation of the parties as a part of the original design.

3. *Conspiracy; proof may be made by circumstantial evidence.* Conspiracies to commit crime may be proved by circumstantial as well as by direct evidence, and no positive agreement for such purpose may be shown.

APPEAL from the Circuit Court of Shelby.

Tried before the Hon. JOHN PELHAM.

The appellant in this case, Pell Martin, was jointly indicted with Charles Martin for the murder of John Pilgreen. A severance' was had and on the trial of the defendant he was convicted of murder in the second degree and sentenced to the penitentiary for ten years. It was shown that after the severance, Charles Martin was first tried for murder; that on the trial of Charles Martin, Pell Martin, who was shown not to be connected by blood or marriage with said Charles Martin, testified as a witness.

On the trial of Pell Martin, the appellant in this case, he moved the court to dismiss the case against him and that he be discharged upon the ground that he was jointly indicted with Charles Martin, and on the trial of Charles Martin, without any suggestion on his part, he was used by the State as a witness in its behalf and testified and disclosed fully all the knowledge he had of the offense and his connection therewith. This motion was overruled and the defendant duly excepted. The other evidence in the case necessary to an understanding of the decision on the present appeal, is sufficiently stated in the opinion.

3c

[Martin v. The State.]

The defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "The court charges the jury that if they believe the evidence they must find the defendant not guilty." (2.) "The court charges the jury that there is no evidence in this case that the defendant Pell Martin conspired with Charlie alias Charles Martin to kill John Pilgreen." (7.) "The court charges the jury that under the evidence in this case that they can not find the defendant guilty by reason of any conspiracy entered into by him and Charles Martin." (22.) "The court charges the jury that if the defendant did not shoot John Pilgreen and did not do or aid in doing any act which caused the death of John Pilgreen and did not instigate or consent to the killing of John Pilgreen, they must find the defendant not guilty though the defendant was present at the time John Pilgreen was killed." (16.) "The court charges the jury that there is no evidence that the killing of John Pilgreen was in pursuance of a conspiracy." (18.) "The court charges the jury that there is no evidence in this case that the death of John Pilgreen was in any manner the result of or followed from a conspiracy between the defendant and Charles Martin." (17.) "The court charges the jury that there is no evidence in this case of any conspiracy between Charles Martin and Pell Martin to take the life of John Pilgreen."

WILLIAM A. COLLIER, for appellant.—When a co-defendant is introduced as a witness by the State, there is an implied promise that he shall not be further prosecuted for the same offense, and the State ought not, under any circumstances, be permitted to violate this implied promise.—1 Am. & Eng. Ency. of Law (2d ed.), 406, note 3.

The facts of this case are not sufficient to authorize a conviction by the defendant on the ground of a conspiracy.—*Williams v. State,* 81 Ala. 1; *Evans v. State,* 109 Ala. 11.

[Martin v. The State.]

MASSEY WILSON, Attorney-General, for the State. The defendant was not entitled to his discharge for having testified as a witness in the trial of his co-defendant.—1 Am. & Eng. Ency. of Law (2d ed.), 406, note 3; Code, § 5301; *Long v. State,* 86 Ala. 36; *Cottingham v. Greely,* 30 So. Rep. 560; *Holley v. Coffee,* 123 Ala. 406.

There was evidence authorizing the jury to infer that there was a conspiracy between the appellant and his co-defendant, and justifying their finding him guilty of the offense charged.—2 Am. & Eng. Ency. of Law, (2d ed.), 32, *et seq; State v. Talley,* 102 Ala. 25; *Singleton v. State,* 106 Ala. 49; Code, § 4308 and cases cited; *Elmore v. State,* 110 Ala. 63; *Tanner v. State,* 92 Ala. 1; *Burrell v. State,* 18 Tex. Rep. 713, 732.

HARALSON, J.—1. There was no error in overruling defendant's motion to be discharged, because he had been used as a witness by the State on the separate trial of his co-defendant, Charles Martin. No promise is shown to have been made by the State to induce the defendant to testify in that case, but the evidence tends to show that he testified voluntarily. Furthermore, there was no exception to the ruling of the court denying the motion.—*Long v. The State,* 86 Ala. 36; 1 Am. & Eng. Ency. Law (2d ed.), 406.

2. It was shown without dispute, that John Pilgreen was shot and killed by Charles Martin at night, on the line of the L. & N. Railroad Co., a short distance above Calera; that no one was present except the two Martins and the deceased. The evidence tended to show, that the Martins were on their way to the house of Mag Holcomb, who lived a short distance beyond the point where the killing occurred; that the Martins had a spite against Cliff Pilgreen, a son of the deceased, and Charles Martin, while the two were together stated that he intended to kill Cliff Pilgreen,—the defendant saying nothing; that while on the way to the Holcomb house, they met the deceased, who had some talk with them, and that when deceased turned and started to walk away from them, Charles Martin shot him in the back and killed him. They both ran away and were

afterwards caught in Talladega county and brought back to Shelby.

The defendant testified in his own behalf, that he did not have anything to do with the killing of John Pilgreen; that he had never had any words or difficulty with him and had never spoken of him to Charles Martin, nor had Charles Martin ever spoken to him about deceased; that he had never in any way entered into any agreement with Charles Martin concerning deceased; that he did not speak of him on the occasion of the killing, and had no knowledge whatever that Charles Martin intended to kill him, and the killing was unexpected to him.

It was further shown that defendant, next morning after the killing, stated to one Smith, that when Charles Martin and he met deceased, they had some conversation with him, but did not state what the conversation was, and when deceased turned and started to walk away up the road from them, Charles Martin shot him in the back. Up the road from them was towards the Holcomb house, where Cliff Pilgreen, the son of the deceased, was, to find whom they were going to said house.

It was shown by the deputy sheriff of Shelby, that defendant while in jail told him that he was present when Charles Martin shot the deceased; that deceased was advancing on him and Charles Martin with a pistol drawn on them, and Charles shot him.

3. As a general and well accepted rule, it may be said: "If several conspire to do an unlawful act, and death happens in the prosecution of the common object, they are all alike guilty of the homicide. Each is responsible for everything done, which follows incidentally in the execution of the common pupose, as one of its probable and natural consequences, even though it was not intended, or within the reasonable contemplation of the parties, as a part of the original design." *Evans v. State*, 109 Ala. 11, 22; *Williams v. State*, 81 Ala. 1. In the case last cited, after stating the law of conspiracy substantially as we have done above, it was added: "The act must be the ordinary and probable effect of the wrongful act specifically agreed on, so that

the connection between the two may be reasonably apparent, and not a fresh and independent product of the mind of one of the confederates, outside of, or foreign to the common design."

In Foster's Reports, 350; it is said: "In order to render a person an accomplice and a principal in felony, he must be aiding and abetting at the fact, or ready to afford assistance, if necessary. And, therefore, if A. happeneth to be present at a murder for instance, and taketh no part in it, nor endeavoreth to prevent it, nor apprehendeth the murderer, nor levyeth hue and cry after him, this strange behavior of his, though highly criminal, will not of itself render him either principal or accessory.

"I would be here understood to speak of that kind of homicide amounting in *construction of law* to murder. For in case of assassination done in private, to which witnesses, who are not partakers in the guilt, are very rarely admitted, the circumstances I have mentioned may be made use of against A., as evidence of consent and concurrence on his part; and in that light should be left to the jury, if he be put upon his trial."—*Burrell v. State*, 18 Texas, 713, 732.

Here, it is urged that the conspiracy, if formed between the Martins at all, was to take the life of Cliff Pilgreen, and not to kill John Pilgreen, that his killing did not flow incidentally in the execution of the common design, as one of its probable and natural consequences, but was an independent product of the mind of Charles Martin, one of the conspirators, outside of and foreign to the common design. It may be admitted, that the killing of Cliff Pilgreen, was the object of the common design, if formed, and that this original purpose did not include the killing of John Pilgreen. But, it does not follow, that their original purpose was not to kill deceased or any other person who stood in the way of the execution of the common purpose. Moreover, deceased was the father of Cliff Pilgreen. The latter was, as the evidence shows, at the house of Mag Holcomb, nearby where the killing occurred. The Martins were on their way to this house, as the evidence tends to show, to kill him; that they did not know de-

[Martin v. The State.]

ceased is not shown; they came upon him near this house, a conversation ensued, the nature of which is not stated in full; deceased turned from them and started in the direction of this house, when Charles Martin shot him in the back. They both ran away to escape arrest and were apprehended in another county and brought back. The defendant told two stories about the transaction; to one person he stated that Charles Martin shot deceased under circumstances which would show it was unprovoked, and to another he voluntarily made the statement, that deceased was advancing on them with a drawn pistol when Charles Martin shot him. This evidence if true, would tend to show that there was an angry altercation between them about something. However this may have been, it does appear that the killing of deceased was as much within the common design of the defendant as it was of said Charles Martin.

Under all the evidence, we fail to see that it is our province to declare, as a matter of law, that the killing of deceased did not follow incidentally in the execution of a common design, if formed, as one of its probable and natural consequences; but we hold that it was the province of the jury under all the evidence and with proper instructions from the court, to determine these matters.

4. Again, it is well understood that conspiracies to commit crime, can be established as well by circumstantial as by direct evidence.—*Marler v. State*, 67 Ala. 56.

There was no error in the refusal of the court to give charge numbered 1.

Charges 2, 7, 16, 17 and 18 were properly refused. They all assert in different language, that there was no evidence of a conspiracy against deceased; but, as has appeared, there was evidence from which the jury might infer such a conspiracy. Charge 22 was also properly refused. It is misleading. From aught hypothesized, the jury might have inferred there was a conspiracy between said parties to kill deceased, and if so, the act of one was the act of the other, in carrying it out.

Affirmed.