194 So.2d 861

**Willie Joe CHILDS**

v.

**STATE.**

6 Div. 166.

Court of Appeals of Alabama.

Oct. 25, 1966.

Rehearing Denied Nov. 22, 1966.

Morel Montgomery, Birmingham, for appellant.

Richmond M. Flowers, Atty. Gen., and John C. Tyson, III, Asst. Atty. Gen., for the State.

**530**

PRICE, Presiding Judge.

The indictment as returned by the grand jury contained three counts. Count I charged burglary. Count II charged larceny. Count III charged the offense of buying, receiving, concealing, etc., stolen property. At the conclusion of the testimony, on motion of the state, Counts II and III were stricken. Defendant was convicted of burglary under Count I and was sentenced to imprisonment in the penitentiary for a term of five years.

Count I charges burglary of the "shop, store or warehouse of The Goodyear Tire and Rubber Company, a corporation, in which goods, merchandise or television sets, things of value, were kept for use, sale or deposit."

Mr. P. R. Smith testified he was office manager of the Goodyear Tire and Rubber Company's retail store at 700 South 21st Street, Birmingham; that the Goodyear Tire & Rubber Company is a corporation; that it sells tires, appliances, televisions, car and home merchandise. On Monday morning, March 1, 1965, when he came to work the "door between the service department and the sales display room was torn down—splintered—and one window comes from the back of the building through the recap shop had been broken and the double doors had been opened from the inside." The window and the double doors opened onto an alley. The shattered door was on the inside of the building; that he was in the store when it closed Saturday night and everything was in order at that time, with the door and window intact and locked. There were around twenty-five General Electric television sets in the store when it closed Saturday night. Sixteen television sets, including one color set, and radios and stereos were missing from the store on Monday morning; that he had serial numbers on two of the television sets, one of which was a color and the other was a portable model.

Phillip Witherspoon testified he had entered a plea of guilty to the charge of burglarizing the Goodyear Store; that he went to the store with Willie Joe Childs, this defendant, in a Buick automobile belonging to Gaines Hicks; that defendant broke into the place and witness followed him inside; that they carried out televisions, radios and hi-fies and put them in the car and drove to Graymont Avenue and Second Street, where they picked up Gaines Hicks; that witness stayed there while Hicks and defendant drove off with the television sets; that they were gone about fifteen minutes and when they returned Hicks, witness, defendant and another fellow, whose name he thought was Henry Miller, went back to the Goodyear store in a Chevrolet panel truck, like a station wagon, and got another load of television sets; two trips were made to Benny Jones' apartment and television sets were left there. This was about 10:30 or 11:00 Sunday morning. That same afternoon a television set and a hi-fi were delivered to Prynter Howard.

Prynter Howard was next called as a witness for the state, but he refused to testify, on the advice of his counsel.

Benny Jones, who was under a charge of buying and receiving stolen property arising out of the incident at the Goodyear store, testified: Sometime in March I saw Willie Joe Childs at my apartment. I saw Childs first and then I saw Witherspoon. When I first saw the defendant he was outside my apartment with two or three fellows. They were in a '56 or '57 Buick automobile. They had seven televisions in the car and one of them asked if I wanted to buy one. I told him I didn't have any money and they asked if I knew anybody that might want one. I called a friend of mine. After the conversation they carried them out to another place. I bought one of the television sets. Willie Childs was in the car and he got out and came upstairs behind the fellow that brought the television up to my apartment. He didn't say anything to me. I saw him again the same day with Phillip Wither-

spoon and three others. This time they came over in a station wagon. I talked to Gaines Hicks in the presence of Willie Childs but I did not have a conversation with Childs. Hicks said he had more televisions, I think he said eight. He didn't say anything about where they came from. The televisions were in the station wagon and me and Henry Miller carried them to Henry Albert Stueckler's house. I drove the station wagon. Phillip Witherspoon, Hicks and Childs went out to the car wash and waited for me. Henry Stueckler operates the car wash at Twenty-second Avenue and Twenty-sixth Street, North, and I delivered seven of the televisions to the car wash and the other eight sets to his house. Stueckler paid me $650.00 for them and I gave the money to Gaines Hicks.

Henry Albert Stueckler testified he stands charged with buying, receiving and concealing stolen property, concerning television sets taken from the Goodyear store. He stated that Sunday, February 28, 1965, Benny Jones and a boy named Hicks delivered television sets to his place of business at 2201 Twenty-sixth Street, North and on the same date Benny Jones and Henry Miller delivered television sets to his home at 1120 Oak Grove Road. All of these fellows were colored. Henry Miller works for him. The television sets were delivered in a Cadillac convertible and a '57 Chevrolet panel truck, which would look more like a station wagon if it had windows in the side. A total of eleven television sets were delivered to him. The one that went to his home was a color set. He paid Benny Jones $650.00 for televisions. Detective Jake Turner picked up the television sets the following Tuesday.

J. B. DePriest testified that on February 28, 1965, he was living at Henry Albert Stueckler's home. He was present when two colored boys delivered two or three television sets, one of which was a color set, to the Stueckler home. One of the boys works for Henry Stueckler and he has heard him called Hawthorne. The sets were transported in a station wagon, or one

of those cars that looks like a station wagon. He testified he had not been charged with any offense in connection with the television sets.

J. K. Turner, a police detective of the City of Birmingham testified that in the early morning hours of March 1, 1965, he investigated the burglary at the Goodyear Tire and Rubber Company store and that he recovered two television sets from the residence of Henry Stueckler. One was a color set and the other was a portable; that other televisions sets were turned over to him and other officers. Fourteen General Electric television sets were returned to the Goodyear Tire and Rubber Company and that they were identified by Mr. P. R. Smith as part of the property taken from the Goodyear Tire and Rubber Company store.

No testimony was presented by defendant.

Defense counsel argues for a reversal of this cause that the State failed to prove the allegations of the indictment that the Goodyear Tire and Rubber Company was a corporation other than by the conclusion of the witness P. R. Smith, and that the evidence was insufficient to prove that the building burglarized was the property of the named corporation, citing as authority for such contention the case of Anthony v. State, 30 Ala.App. 425, 7 So.2d 513.

■ The sworn plea denying the incorporation of the corporation named in the indictment, provided for by Title 15, Sec. 315, Code 1940, was not filed in this case, and it was not necessary for the state to prove such incorporation. Burrow v. State, 147 Ala. 114, 41 So. 987. See also White v. State, 42 Ala.App. 249, 160 So.2d 496.

■ The indictment charged the breaking and entering of the store of Goodyear Tire and Rubber Company. The proof showed the building was occupied by the said company as a store. It was immaterial who owned the building. Hale v. State, 122 Ala. 85, 26 So. 236; Vines v. State, 37 Ala.App. 22, 69 So.2d 475.

At the close of the state's testimony defense counsel moved to exclude the state's evidence on the ground that there was no evidence tending to connect him with the burglary other than the uncorroborated testimony of the accomplice Phillip Witherspoon. It is insisted in brief that Benny Jones and Henry Albert Stueckler were accomplices.

Section 307, Title 15, Code 1940, prohibits a conviction unless the testimony of the accomplice is corroborated by other evidence tending to connect the defendant with the crime charged.

 The witness Witherspoon is an admitted participant in the burglary, and under the undisputed evidence was an accomplice. The fact that the witnesses Benny Jones and Henry Albert Stueckler were purchasers of the stolen property and indicted for buying, receiving or concealing it, does not make them accomplices as a matter of law. Dye v. State, 25 Ala.App. 138, 142 So. 111; Sweeney v. State, 25 Ala. App. 220, 143 So. 586. "The burden of proving the witness to be an accomplice is, of course, upon the party alleging it for the purpose of invoking the rule, namely upon the defendant—3 Wigmore on Evidence, Sec. 2060(c). Darden v. State, 12 Ala.App. 165, 68 So. 550." Horn v. State, 15 Ala.App. 213, 72 So. 768. (Except, of course, where the state's evidence undisputedly makes the witness an accomplice) There was no evidence tending to show that Jones and Stueckler were accomplices.

The credibility and weight of the evidence corroborating an accomplice and tending to connect the defendant with the commission of the offense are questions for the jury. Horn v. State, supra; Slayton v. State, 234 Ala. 1, 173 So. 642; Burns v. State, 246 Ala. 135, 19 So.2d 450.

We are of opinion the testimony of the accomplice as to the burglarizing of the Goodyear Store was sufficiently corroborated by other testimony tending to connect the defendant with the commission of the offense to warrant the submission of the issue to the jury and to sustain the judgment of conviction.

We find no reversible error in the denial of the motion to exclude the evidence, the refusal of the affirmative charge nor in overruling the motion for a new trial.

The judgment is affirmed.

Affirmed.