220 So.2d 852

**John Henry DAVIS**

v.

**STATE.**

**8 Div. 115.**

Court of Appeals of Alabama.

May 28, 1968.

Rehearing Denied June 28, 1968.

Reversed on Mandate April 1, 1969.

Weeks & Weeks, Scottsboro, for appellant.

MacDonald Gallion, Atty. Gen., and Walter S. Turner, Asst. Atty. Gen., for the State.

CATES, Judge.

This is an appeal from a conviction of second degree burglary on which the appellant was sentenced to the penitentiary for two years.

On the night of September 20–21, 1966, some one pried open a window in the washrack in Mr. E. C. Dawson's filling station in Scottsboro. Coins for $25.50, bills for $40.00 and two tires were gone.

Eddie Lee Moore saw John Henry Davis after dark September 20. Davis asked Moore (who once worked there) if they kept money at Dawson's Sinclair station. Moore stated that they did when he worked there.

Then Moore said he was ready to go home. Davis said, "Wait a minute. I will walk up that way with you." As they got near Moore's home Davis suggested, "let's go back and have a look at the Sinclair."

To this Moore demurred but Davis insisted, so in the end Moore went with him. This was at about eleven at night.

Davis went "over on the back of the service station where the J. C. Jacobs Bank is * * * at the washroom on the back window and he pulled a screw driver out of his pants and undone— broke a latch on the window." After Davis went in, he told Moore "to come on in before the cop came." This Moore did.

Inside Moore stopped at the water fountain and Davis at the cash register getting money. Moore told him "to come on."

After Davis put the money in his pocket the two "left out," Davis having closed the window. They went across Scott Street; "the Police came down the road and we run into a field." This was across U. S. Highway 72.

The police shone a spotlight about the field but did not see either Davis or Moore.

Moore was at school the next day. Davis came there and had Moore called out of class, handed him "a ten and five ones."

Moore testified that simultaneously with the delivery of the fifteen dollars Davis told him, "Here is your part of the money and I will see you later."

State's witness, Ida Ruth McCamie, remembered "when the D. & H Sinclair Service Station was broken into." She saw Davis at her house "after it happened." James Calloway was already there when Earl Evans came in there with Davis.

Davis "had some money." Calloway had a newspaper which had an account of the burglary. Calloway asked Ida Ruth if she had heard about it. To which she replied "Yeah * * I had heard about it." Her testimony continued, "John Henry [Davis] came over there and took the paper out of my hands and laughed at it."

On the same occasion the transcript continues:

"A   He paid me $2.00 he owed me. That was the time he had the money when he came in.

"Q   Was that the same day as the newspaper?:

"A   Yes, sir.

"Q   And what did he say about the money?

"A   He came in with the money and I said, 'Oh, man, where did you get so much money?'

"Q   Describe the money—

"MR. HAMLET: We object, Your Honor, this is immaterial, irrelevant, describe the money.

"Q   What did he have the money in?

"A   A brown paper sack about that tall. (indicating)

"THE COURT: Overruled.

"Q   Was it anything else—was it nickels, pennies, dimes or quarters or paper money or what?

"A   Quarters change and that is all I saw.

"Q   You have any idea how much he had in there?

"A   No, sir, I don't.

"Q   What was he doing with it?

"A   He just run his hand down the sack and he owed me $2.00 and he paid me in quarters.

"Q   Did he make any request of you about the money?

"A   No, sir, he did not.

"Q   Now, to refresh your memory when I talked to you out in the witness room

he said, 'Oh, lord, don't tell anybody about this.'

"MR. HAMLET: Object to that. He is cross examining his own witness.

"THE COURT: Overruled.

"A   Yes, sir.

"Q   He said what now?

"A   That is when I asked him what are you doing with so much money and he said, 'Oh, lord, don't you say anything about this,' and that is all he said about it.

"MR. THOMAS: Your witness.

"MR. HAMLET: Your Honor, I move her testimony be stricken because the Solicitor asked her was it along about the time that this service station was broken into and they haven't pin pointed the time.

"THE COURT: She said it was just after it if I am not mistaken.

"MR. HAMLET: Along about the time. I move that her testimony be stricken. It is immaterial, irrelevant, incompetent and can't possibly have a bearing on this case, Your Honor.

"THE COURT: Overruled and you can take an exception."

A policeman testified that he saw two boys on Scott Street September 20, 1966, about 11:30 P. M. They started running across a vacant lot. The policeman and his partner searched there in vain.

The only description this witness gave was that one boy was "a little bit taller than the other one and one * * * had on a white shirt and the other * * * a light colored shirt." On cross the officer could not say whether the boys "were colored or white."

Davis took the stand in his own behalf. He denied breaking and entering; denied giving Moore any money; and that he had

a sack of money when he paid Ida Ruth McCamie $2.00.

This latter payment he testified was to settle an old whiskey bill which he paid from his earnings at Mack Finley's Cafe. As far as the night of September 20, 1966, he testified that he stayed at the Morton Hotel on Ninth Street in Chattanooga.

## I.

If Moore is an accomplice (i. e., whether called principal, accessory before or to the fact) then this cause must be reversed because Moore's testimony has not been corroborated under Code 1940, T. 15, § 307, which reads:

"§ 307. A conviction of felony cannot be had on the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient."

In Sorrell v. State, 249 Ala. 292, 31 So.2d 82, it was laid down that if the accomplice's testimony is disregarded, then the remainder is weighed. *Sorrell* lays down that in order to connect the defendant with the crime the corroboration must be of

a) Fact (or circumstance) of substantive character;

b) Fact (or circumstance) tending to prove guilt;

c) Fact (or circumstance) which is unequivocal (and certain) in character (i. e., inconsistent with the innocence of accused); and

d) Fact (or circumstance) tending legitimately to connect defendant with crime (i. e., that which raises more than a mere suspicion of guilt).

Also, opinion evidence alone to corroborate, it would seem from *Sorrell*, must concern itself with some object or fact

(e. g., an opinion, standing by itself, of a trait or likelihood of human conduct would not be of substantive character). Evans v. State, 42 Ala.App. 587, 172 So.2d 796; Berry v. State, 43 Ala.App. 60, 179 So.2d 428; Cooper v. State, 43 Ala.App. 385, 191 So.2d 224; King v. State, 44 Ala.App. 119, 203 So.2d 466; McElroy, Law of Evidence in Alabama (2d Ed.), § 300.01, particularly subdiv. (5), Vol. 3, p. 118.

We find in the evidence, aside from Moore's testimony, the following:

a) A policeman saw two unidentified (other than comparatively by height and color of shirts) boys;

b) Davis paid Ida Ruth McCamie a $2.00 debt;

c) He had a paper sack with an unspecified amount of coins therein, and asked Ida Ruth McCamie not to talk about his having the money;

d) He laughed at the newspaper account of the burglary; and

e) He—after the State had rested and the defense's motion to exclude had been overruled—testified and gave an uncorroborated defense of alibi.

Only the possession of the paper sack with coins and the request for silence is of any weight in our review.

Sudden appearance of wealth often is a circumstance relevant to its acquisition. Thus, the "net worth" and "bank account and disbursements" methods are recognized snares for income tax exaders. Smith v. United States, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192; Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150; United States v. Calderon, 348 U.S. 160, 75 S.Ct. 186, 99 L.Ed. 202; Friedberg v. United States, 348 U.S. 142, 75 S.Ct. 138, 99 L.Ed. 188.

The use or possession of property to establish an inference of its source is a troublesome problem of cause and effect. In medieval days jurors were witnesses as

well as triers of fact. Hence, they knew the poor as well as the rich in their vicinage. Today, however much jurors do, as a matter of fact, draw on their outside knowledge, the law nevertheless insists that they must regard only the evidence and its reasonable implications.

Judge McElroy has well outlined the reaches of this question in his Law of Evidence in Alabama (2d Ed.), at § 50.01, captioned "TRACES: POSSESSION OF MONEY AS EVIDENCE OF ITS ACQUISITION FROM A SPECIFIC SOURCE."

The first two paragraphs of that section are a well balanced summary:

"The fact of a person's possession of money without some fairly reasonable indication that the money was acquired from a particular source is not provable for the purpose of showing that he acquired it from such particular source, because the inference of such acquisition is too weak. Turner v. State, 124 Ala. 59, 27 So. 272 (larceny); Leath v. State, 132 Ala. 26, 31 So. 108 (forgery; good opinion by Sharpe, J.).

"But if facts of the amount, denomination, and other circumstances of such possession, reasonably indicate in the circumstances of the case that the money was acquired from a relevant particular source, evidence of such facts is admissible."

Since medieval days the incidence of barter of goods or services for other goods or services has declined until under the Industrial Revolution and its aftermath barter is a rarity. The use of money and credit in turn has increased many fold.

United States coins within the same legal tender range, e. g., 25¢ pieces or "quarters," are only differentiated by their metallic content and their date of issue. Coins approach fungibility. Treasury or Federal Reserve Bank Notes vary not only by issue but by denomination and each has its individual serial number.

Thus, some of the older cases from rural communities having many aspects of the share-cropping economy must be looked at today for basic principles and not for detailed precedents. This particularly where the accused has any earnings which a consumer finance lender might accept as collateral.

Under its burden to prove beyond a reasonable doubt and to moral certainty, the State, in relying on the possession of money, should at least by implication reasonably exclude the sale of property, the opportunity and credit standing to borrow and the likelihood of gifts, social insurance payments or inheritances. The burden of proof on the general issue never shifts to a defendant.

Here no evidence came in as to what Davis earned, if anything, at Mack's Cafe. There was no proof to the jury of his prior means. To show him a pauper turned prince, more was required to make the metamorphosis incriminating. See Holland v. United States, supra, 348 U.S. at page 127, 75 S.Ct. 194.

In Hicks v. State, 99 Ala. 169, 13 So. 375 (burglary and theft of four ten-dollar gold pieces), the opinion concluded that "there was other evidence in the case, besides the bare possession of the money." The State had *traced* the defendant's spending. When arrested Hicks tried to get rid of a small bag with *a ten-dollar gold piece*.

Martin v. State, 104 Ala. 71, 16 So. 82, involved a family with no apparent "means" with a shiftless husband suddenly buying a lot and erecting a house thereon. Brickell, C. J., stated, " * * * such change of condition and circumstances is a fact proper to be submitted to the jury in connection with the other evidence * * * "

The *Martin* opinion, by citing with approval Com. v. Montgomery, 11 Met. 534, seems to adopt the relevance of possession of untraced wealth, provided the defendant's prior impecunious circumstances are shown. Leonard v. State, 115 Ala. 80, 22.

So. 564; 91 A.L.R.2d 1046; Wigmore (3d Ed.), § 154; State v. Stokes, 250 La. 277, 195 So.2d 267; Self v. United States, 5 Cir. 249 F.2d 32; Gill v. United States, 285 F.2d 711.

Hence, we conclude that aside from Moore's testimony there was not sufficient evidence to connect Davis with the burglary charged in the indictment. Turner v. State, 124 Ala. 59, 27 So. 272; Leath v. State, 132 Ala. 26, 31 So. 108.

## II.

Although Moore was indicted and pled guilty to the same offense, this fact *does not for Davis's case* make him out ipso facto an accomplice. Letham v. State, 38 Ala.App. 92, 77 So.2d 499.

The testimony here shows only that Moore went along with Davis, watched Davis, but did not watch out to help Davis. Indeed, it is inferable that rather than being of help as, say a look out, he was a hindrance. For Davis ordered him inside so that Moore's standing outside would not alert the police. Moore's flight with Davis does not alter what he was doing or not doing while Davis broke in and pilfered.

That Davis paid Moore $15.00 under all the evidence before us was not part of the res gestae and unconnected with any prior agreement. Hence, Moore was, under the proof, at most either an accessory after the fact, being paid to conceal Davis's crime, or a receiver of stolen property if it had been proved that the $15.00 came from the station.

In Dye v. State, 25 Ala.App. 138, 142 So. 111, this court expressly approved (for that case) a jury direction as to a purported accomplice. We quote:

"* * * appellant insisted that the purchaser of the stolen goods, the said Digeorgia, was an accomplice as a matter of law. The trial court left it to the jury to decide from the evidence whether Digeorgia was an accomplice, and in this we think there was no error. On this question the court made the following statement, to which exception was reserved: 'I will tell the jury that unless there is some evidence which shows that Sam Digeorgia knew they were going to burglarize this car, and aided, abetted or encouraged them to do it, that he is not an accomplice. There is some evidence here tending to show that Sam Digeorgia bought the stolen property. If that is the only evidence that they have to connect Sam Digeorgia with the burglary, that is not sufficient to show that he knew anything about any prearrangement to rob the car. Of course if he had put them up to it, or aided or encouraged them, then they could have connected him as a party to the robbery or burglary of the car. But just the fact that he bought stolen property would not be sufficient—that is, bought the sugar,—unless he had something to do with stealing that sugar or burglarizing that railroad car. In other words he had to have a hand in the burglary before you could connect him with the burglary. They have him indicted, as I understand it, for buying, receiving or concealing stolen property. But that is quite a different offense from what you are trying this defendant for. He is being tried for burglarizing a railroad car, and Sam Digeorgia is indicted for having bought, received or concealed stolen property. Now, unless there is some evidence here showing that Sam Digorgia had something to do with the burglary, or aided or encouraged or abetted whoever burglarized the car, you couldn't connect him with the burglary of the car; and unless he was a party to that burglary he wouldn't be an accomplice.' This court approves the foregoing statement, and holds there was no merit in the exception mentioned. In the court's oral charge to the jury, the law relative to the inquiry in question was also well and properly stated."

We have heretofore tried to analyze the *Dye* case. In *Childs*, 43 Ala.App. 529, 194 So.2d 861, Price, P. J., stated:

"* * * The fact that the witnesses Benny Jones and Henry Albert Stueckler were purchasers of the stolen property and indicted for buying, receiving or concealing it, does not make them accomplices as a matter of law. Dye v. State, 25 Ala.App. 138, 142 So. 111; Sweeney v. State, 25 Ala.App. 220, 143 So. 586. 'The burden of proving the witness to be an accomplice is, of course, upon the party alleging it for the purpose of invoking the rule, namely upon the defendant—3 Wigmore on Evidence, Sec. 2060(c). Darden v. State, 12 Ala.App. 165, 68 So. 550.' Horn v. State, 15 Ala.App. 213, 72 So. 768. (Except, of course, where the state's evidence undisputedly makes the witness an accomplice.) There was no evidence tending to show that Jones and Stueckler were accomplices."

See also *Cooper,* supra, and Leonard v. State, 43 Ala.App. 454, 192 So.2d 461.

In Pugh v. State, 42 Ala.App. 499, 169 So.2d 27, we noted that passivity in the presence of the commission of a felony could not alone make one a participant therein, even though the power and duty to raise the hue and cry or attempt a citizen's arrest undoubtedly still exists. Hollinger v. State Attorney General, 40 Ala. App. 281, 112 So.2d 220; Davis v. State, 257 Ala. 447, 59 So.2d 592; Martin v. State, 136 Ala. 32, 34 So. 205.

In State ex rel. v. Tally, 102 Ala. 25, at 66, 15 So. 722, at 737, we find:

"* * * Mere presence for the purpose of rendering aid obviously is not aid, in the substantive sense of assistance by an act supplementary to the act of the principal; nor is it aid in the original sense of abetting, nor abetting in any sense, unless presence with the purpose of giving aid, if necessary, was preconcerted, or in accordance with the general plan conceived by the principal and the person charged as an aider or abettor, or, at the very least, *unless the principal knew of the presence,* with intent to aid, of such person. * * *" (Italics supplied.)

Also we note that Moore seems probably to have been younger than Davis, being still in school. Davis twice ordered him about. There is not, however, as strong an inference of his acting under duress as existed in Ferrell v. State, 41 Ala.App. 659, 148 So. 2d 656. See also Hurley v. State, 42 Ala. App. 92, 153 So.2d 254.

■ The requirement of § 307, supra, is an exception to the general rules of admissibility of evidence and competency of witnesses. It is purely statutory. It has been given an interpretation favoring the prosecution. Malachi v. State, 89 Ala. 134, 8 So. 104.

In *Leonard,* supra, we observed:

"* * * usually complicity is a question of fact. The jury becomes ordinarily the judge of whether or not (1) a witness is an accomplice and (2), if he is, his testimony has been corroborated properly in character and weight.

"Yet, at the threshold, there is a small area of a pure question of law. Were the judge to let all questions of § 307, supra, be adjudged by the jury, then as the Oregon court points out, the jury would have the sole power to suspend or enforce the operation of a legislative enactment. State v. Carr, 28 Or. 389, 42 P. 215.

"Accordingly, we consider this narrow field can be described basically in terms of the undisputed evidence, both in chief and on cross, both for prosecution and defense.

"Thus a question of law is presented where, after allowing all reasonable presumptions in favor of not needing corroborative evidence, nevertheless the trial judge should be clearly convinced by a preponderance of the witness's testimony and all the other evidence (1) that the

witness could have been indicted and convicted of the same charge of felony for which the defendant is on trial, and (2) that the witness has committed acts which admit of no other reasonable inference than that he was an active freewilled participant in the crime. The conclusion should be well-nigh inescapable other than by resorting to naivety or fantasy."

■ Thus, we conclude that whether or not Moore was an accomplice was not a pure question of law. This because of the conflicting tendencies of the evidence of what he, Moore, did which might or might not be viewed as complicity. Hence, this conflict being essentially one of fact was for the jury on whatever proper instructions the defendant might ask in writing before the jury retired. Alternatively, if he was not an accomplice in law or fact, then corroboration was unnecessary.

## III.

The foregoing view apparently was not shared by the trial judge in the instant cause. In his oral charge he stated in part:

"The question of corroboration of an accomplice, you have heard something said about this in the argument to the jury. An accomplice is a person who is jointly guilty along with another or who aids and assists or joins another in the commission of the crime. That is the definition of an accomplice and the law says a person cannot be convicted upon the unsupported or uncorroborated testimony of his accomplice. If that is all that the State has in the case then the defendant couldn't be convicted. Now, corroboration simply means this. Some other testimony tending in itself to connect the defendant with crime. In this case if there is no other testimony outside of the young boy who was on the stand, who was admittedly from the State side of the accomplice, if there is no other testimony connecting the defendant with the *case* he wouldn't be guilty.

"If there was some other testimony then [sic—if?] you are convinced of the truth of that testimony beyond a reasonable doubt, the testimony of one of the State's witnesses here, the Moore boy would be corroborated. Corroboration simply means support or in the usual case it means further testimony tending within itself to connect a person with a crime. I think I have made that clear. I have tried to make that clear to you but the rule is that a person cannot be convicted upon the uncorroborated testimony standing alone of an accomplice. And in order for there to be a conviction there must be some further testimony from some other witness tending to connect the person, the defendant with the commission of the crime." (Italics added.)

No exception was taken to the oral charge. No separate written charges were requested by either party.

■ In civil causes the charge of the court to a jury, unexcepted to, becomes ad hoc the law of the case, not reviewable on appeal. Lee v. Gidley, 252 Ala. 156, 40 So. 2d 80; Sims v. Greniewick, 43 Ala.App. 159, 184 So.2d 157.

There is much doubt in criminal cases as to the scope of this doctrine. The situation here is much like that found in West v. State, 22 Ala.App. 187, 114 So. 568 (fn. 5).

There, charge A given at the request of the State directed that, under the undisputed evidence, deceased's body had three wounds. The opinion says:

"This charge having been given, it became a part of the law in the case and was to be considered by the jury in connection with the oral charge of the court, * * *"

The much criticized case of Woodson v. State, 170 Ala. 87, 54 So. 191, no doubt is the acme of the rule of the law of the case. Admittedly the evidence failed to make a prima facie case. See also Pugh v. State, 239 Ala. 329, 194 So. 810.

Here Davis's case differs. The oral charge in requiring corroboration put a greater burden on the State than our view of Moore's complicity would warrant.

Nor do we think that there was error in denying Davis's motion to exclude because of the lack of corroboration. Moore not being an accomplice, his testimony required no corroboration.

The judgment below is due to be

Affirmed.

JOHNSON, J., concurs in result.

Reversed on authority of Davis v. State, 283 Ala. 686, 220 So.2d 860.