321 So.2d 257

**Harry PEOPLES, alias**

**v.**

**STATE.**

**3 Div. 379.**

Court of Criminal Appeals of Alabama.

Oct. 21, 1975.

---

Edward B. Raymon, Montgomery, for appellant.

William J. Baxley, Atty. Gen., and Jack A. Blumenfeld, Asst. Atty. Gen., for the State.

BOOKOUT, Judge.

Robbery. Sentence: ten years imprisonment.

Bertha Stephens, the state's first witness, testified that she was an employee of Boylston Food Market in Montgomery on the night of the robbery, December 3, 1974. At around 6:45 p. m., near closing time, she noticed a man, later identified as Lynn Williams, standing in the dairy section watching the employees of the market. She reported his suspicious conduct to the manager. Upon the manager inquiring if he could be of assistance, Williams left the store without making a purchase.

As Bertha Stephens left work around 7:00 p. m., she observed a light blue Mercury automobile with a dark vinyl top and a dent in the right fender. She said the car contained more than two black men, but she did not state where the car was located or whether Williams was an occupant. She later identified the car for the police, after the robbery.

On cross-examination, she testified that she did not see the appellant, Harry Peoples, at the market the night of the robbery. She could not identify him as being in the car and could not identify anyone in the car. The robbery took place shortly after she left work and therefore she was not present when it occurred.

Mr. Charles Gross, the owner-manager of the market, testified to the same facts, preceding the robbery, as Bertha Stephens. He further testified that shortly after 7:00 p. m., he was held up and robbed by either three or four black men. Two were wearing ski masks. They held him, his son, and a customer at gun point and robbed him of approximately $680. Around $75 or $80 was "rolled money"; apparently coins.

On cross-examination, Mr. Gross stated that he could not identify Peoples as one of the robbers; that he could not identify any of the robbers due to the masks.

Charles Gross, Jr. was working in his father's market at the time of the robbery. He testified to essentially the same facts relating to the robbery as his father. He, likewise, could not recognize any of the robbers and could not identify Peoples.

Fletcher Duke, an off-duty deputy sheriff, was in the market as a customer at the time of the robbery. He saw three robbers but could not recognize or identify any of them as being Peoples. He was robbed of forty dollars.

Lynn Williams was called as a witness for the state and testified that the appellant participated in the robbery. He said that he, Peoples, and two others drove to the store, that he went in and looked over the store and reported back to the others. They were in a light blue Mercury with a dark blue top which one of the accomplices was driving.

After reporting to his accomplices, Williams said he stayed in the car and the others went in the store, stayed from five to fifteen minutes, and came back to the car at a fast pace. They then drove to the house of Linda Thomas where he saw some change emptied out on a rug. Williams said he did not see any ski masks or guns. He said Peoples was at the Thomas house with him and the others when the police came and that he ran, leaving Peoples in the house.

On cross-examination, Williams stated that he was also charged with robbery, but had not come to trial and was out on bond. He denied receiving a promise of any favorable consideration from the state in return for testifying against his co-defendants.

T. J. McClain testified that during December 1974, he was employed as a Montgomery City detective. Without specifying when, he testified that he came in contact with Peoples in a local motel room. He said that one of the other officers advised Peoples of his constitutional rights and then they removed from Peoples' possession some $375.

The state rested and the defense moved to exclude the evidence on the ground that the uncorroborated testimony of Williams as an accomplice was insufficient to prove an offense pursuant to Title 15, Section 307, Code of Alabama 1940. The motion was denied and the defense presented its evidence.

Wendell Stokes, the first witness for the defense, admitted that he was involved in the robbery. Stokes testified that he robbed the store with Eugene Starks and Lynn Williams, but that Harry Peoples did not take part in the robbery. He testified that on the night of December 3rd he paid Peoples $110 for marijuana the appellant had sold him. After the robbery, he had called Peoples to come over to the Thomas home and get paid. Since Stokes had robbed the market, he had the money available and decided to pay the appellant. Peoples was at the Thomas house to pick up his money when the police arrived. Peoples apparently escaped and was arrested later at the motel. Nothing in Stokes' testimony indicated that Peoples knew the source of the $110.

Stokes reiterated that he, Williams and Starks committed the robbery and that Peoples was not a participant. He said Lynn Williams did not remain in the car, but went in the market with him during the robbery.

On cross-examination Stokes denied that his testimony was influenced by the fact that Lynn Williams was the one who had implicated him in the robbery.

Eloise Boyd, mother of Harry Peoples, testified that in the middle of November 1974, she gave her son $300 from the proceeds of a $500 cash bond. She also testified that her son was at home from 6:00 p. m. to 8:00 p. m. on December 3, 1974. On cross-examination the witness testified that she gave her son the $300 because he had recently been released after five months in jail and he wanted to shop for his little girl for Christmas.

The defense called Peoples' sister, Marie Watkins, who testified that on the 18th of November, 1974, she gave her brother $50 from her purse and went to the bank and got an additional $240 and gave him. A withdrawal slip was introduced into evidence showing the withdrawal of $240 dated November 18, 1974.

The last witness called by the defense, Mrs. Pauline Eubanks, testified that she was the Circuit Clerk of Montgomery County, and that as part of her job she had access to, and keeps records pertaining to bonds, payment of bonds, and restitution of bonds, when someone is released from jail. Mrs. Eubanks testified that she paid $500 to Marie Watkins on November 14, 1975.

Appellant requested the affirmative charge with hypothesis which the trial court refused.

### I

■ Both the motion to exclude the states' evidence and the request that affirmative charge with hypothesis are sufficient to raise the issue of the use of uncorroborated testimony of an accomplice as a basis for conviction. *Alexander v. State*, 281 Ala. 457, 204 So.2d 488 (1967); *Leonard v. State*, 43 Ala.App. 454, 192 So.2d 461 (1966).

### II

The sole issue presented is whether Lynn Williams' testimony was corroborated by other evidence.

Title 15, Section 307 Code of Alabama 1940 provides:

"A conviction of felony cannot be had on the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient."

In *Sorrell v. State*, 249 Ala. 292, 31 So. 2d 82 (1947) the Supreme Court of Alabama set forth the rule that:

" ' . . . the proper test in determining whether there was sufficient corroboration of the testimony of an accomplice, according to statutory requirements, is first to eliminate the evidence of the accomplice and then, if upon examination of all the other evidence there is sufficient inculpatory evidence tending to connect the defendant with the commission of the offense, there is sufficient corroboration.' "

In considering the question as to whether the trial court correctly overruled the motion to exclude, we can only consider the evidence which was before the trial court at the time the motion to exclude was made. *Livingston v. State*, 44 Ala. App. 559, 216 So.2d 731 (1968). We are required to consider the evidence in its most favorable light for the prosecution. *Womack v. State*, 34 Ala.App. 487, 41 So. 2d 429 (1949).

Excluding the evidence of Lynn Williams, and considering the remaining evidence presented by the state in its most favorable light, we are left with only the fact that the appellant was in possession of some $375 at the time of his arrest.

The record fails to show when the appellant was arrested; whether it was the same night of the robbery or at some other time during the month of December.

In its proof, the state only asked the arresting officer if he was employed as a police officer during the month of December 1974. They then asked where the officer had occasion to come in contact with the appellant. Next, the officer testified that the appellant was in possession of the $375. For ought that appears in the record, the date of the arrest could have been December 31 of that year.

In *Davis v. State*, 44 Ala.App. 684, 220 So.2d 852, this Court cited McElroy's Law of Evidence in Alabama (2nd Ed.), Section 50.01: " 'TRACES: POSSESSION OF MONEY AS EVIDENCE OF ITS ACQUISITION FROM A SPECIFIC SOURCE.

* * * * * *

" 'The fact of a person's possession of money without some fairly reasonable indication that the money was acquired from a particular source is not provable for the purpose of showing that he acquired it from such particular source, because the inference of such acquisition is too weak. *Turner v. State*, 124 Ala. 59, 27 So. 272 (larceny); *Leath v. State*, 132 Ala. 26, 31 So. 108 (forgery; good opinion by Sharpe, J.).

'But if facts of the amount, denomination, and other circumstances of such possession, reasonably indicate in the circumstances of the case that the money was acquired from a relevant particular source, evidence of such facts is admissible.' "

Judge Cates, in the *Davis* opinion stated: "Under its burden to prove beyond a reasonable doubt and to moral certainty, the State in relying on the possession of money, should at least by implication reasonably exclude the sale of property, the opportunity and credit standing to borrow and the likelihood of gifts, social insurance payments or inheritances. The burden of proof on the general issue never shifts to a defendant."

The word "corroboration" as used in Title 15, Section 307, supra, has been defined to mean "strengthen", not necessarily to prove a specific fact testified to by the accomplice. Corroboration was generally not required at common law and therefore Section 307, supra, being in derogation of the common law must be strictly construed. Corroboration of the testimony of an accomplice need not be sufficiently strong of itself to support a conviction. It is sufficient if it tends to connect the accused with the offense. *Cunningham v.*

*State,* 54 Ala.App. 656, 312 So.2d 62 (1975), and authorities cited therein.

The mere fact that the appellant was in possession of $375, at some time during the month of December 1974, standing alone, does not sufficiently strengthen the testimony of the accomplice and does not tend to connect the accused with the offense.

The state failed to meet the burden of proof necessary to corroborate the testimony of the accomplice and pursuant to Title 15, Section 307, supra, the motion to exclude the state's evidence should have been granted. Failure to do so constitutes reversible error.

Reversed and remanded.

All the Judges concur.