Jo Anne Wiggins, alias was indicted for first degree theft in violation of § 13A-8-3, Code of Alabama 1975. The jury found the appellant "guilty as charged". She was sentenced to eight years' imprisonment in the state penitentiary and ordered to pay $89,101.90 (sic) in restitution. Since the appellant does not raise the sufficiency of the evidence as an issue on appeal, the evidence presented at trial will be only briefly stated here.
The evidence presented by the State tended to show that the appellant, while an employee with The City of Andalusia, Utility Department, embezzled close to $90,000 from the department during a period of time which ran from April, 1982 until January, 1985.
The appellant was employed as a Cashier-Billing Clerk III and her duties included submitting monthly utility bills to customers and receiving payments for these bills. The State's evidence showed that the appellant submitted large bills to certain businesses and, when the bills were paid by the companies, a second bill for a lesser amount was made out and the difference between the two bills was retained by the appellant.
The evidence showed that, during the period of time in question, this appellant was the only person in the office who knew how to adjust this particular kind of account through the use of the computer.
In mid-January, 1985, another employee, Phoebe King, a bill clerk with the department, discovered a discrepancy between the amount of a check received from one of the companies and the accompanying bill stub amount. This was discovered while she was totaling up the receipts on the cash register for the bank deposit. After she discovered this discrepancy, Ms. King attached the cash register tape to the two bills and dropped them on the department manager's desk without saying anything about her findings.
The department manager, Joe Trawick, testified that, after Ms. King dropped the bills on his desk, he looked at them for a few minutes and then called Ms. King in his office. She explained her findings.
That afternoon, during the lunch hour, Mr. Trawick obtained a copy of a check which had been deposited in the bank. The check showed an amount higher than that which had been rung up on the register.
That evening Mr. Trawick went back to the office and searched through all of the employees' desk drawers. He found several *Page 75 
bills stapled together in the appellant's desk drawer underneath a billing schedule. He made notes of them and put them back. The next day, during the appellant's lunch hour, he made copies of the bills which were still in her desk drawer.
Mr. Trawick testified that he found five pairs of bills. Each pair consisted of two bills, one showing a higher amount than the other, stapled together. The two bills in each pair were for the same account and had the same date. Along with these pairs of bills were seven of the appellant's daughter's utility bills.
The following day Mr. Trawick asked the appellant for a copy of the rate schedule which he had seen on top of these bills when he copied them. When she took the rate schedule out of her drawer, Mr. Trawick again saw the bills still in her desk. Mr. Trawick testified that later during that week he heard the appellant complain that someone had been rummaging through her desk drawer. The night after he heard the appellant complaining, Mr. Trawick again looked in the appellant's drawer for the bills, but they were gone. He also personally examined the utility bills on file in one business. He discovered that this customer's files showed larger billing amounts than those which were recorded in the city's billing history printout sheet.
Mr. Trawick then notified the mayor of Andalusia of the problem and asked the city auditor to investigate the matter. The appellant and the other three clerks in the office were then interviewed. During the appellant's interview, she stated that she did not know anything about the bills that had been found, and that "it must be a problem in the computer." (R. 82)
W.S. Rabren, Jr., a CPA hired by the City of Andalusia in March, 1985, testified that he examined the accounts of 13 different utilities department customers. Rabren testified that, during the years from April, 1982 to January, 1985, he discovered 132 instances where discrepancies existed between the amount shown on the utility bills in the possession of thecustomers, and the amount shown as billed to the same customers in the City's records. He determined that, sometime before the check was rung up on the cash register, a substitute bill for a lesser amount had been generated. When the check was then rung up, this lesser amount was used and the appellant removed the difference in cash. Rabren testified that the total of the bill stubs in the cash register always equaled the deposits, therefore, the excess must have been removed. The total dollar amount involved based on the 132 instances discovered was $89,101.97. (R. 269)
Rabren testified that in each case he compared the amount that the customer said he paid with the City's records. The checks paid by the customer were for an amount greater than the amount of cash receipts reflected in the City's records.
The State presented the testimony of several merchants and store clerks describing the appellant's spending habits during the period of time in question. Evidence was also presented that the appellant acquired approximately $50,000 in CDs during the years in question. (R. 324). The CDs were in the name of the appellant, her husband and her children until April of 1985 when, at that time, the appellant removed her name and her husband's name.
 I
The appellant contends that the trial court erred in allowing the State to introduce evidence of the appellant's spending habits and possession of large amounts of cash during the years in question, including her acquisition of the CDs. Although the appellant frames this argument in terms of three separate issues in his brief, we deem it appropriate to consider them all here.
 "It is generally held that the fact of a person's possession of money, without some fairly reasonable indication that the money was acquired from the particular source of the now-charged crime, is not provable for the purpose of showing that the accused acquired it from such particular source. The rationale for this is that the inference to be drawn from mere possession is too weak.
 "The burden is upon the state to offer proof sufficient to give rise to a fair *Page 76 
inference that the money held by the accused actually came from the charged crime. This can be accomplished by evidence that the money taken in the crime and that possessed by the accused both had identical markings or that they were of the same denomination. If the facts of amount, denomination and other circumstances reasonably indicate that the money was acquired in the course of the crime, then such facts are admissible. "Another manner in which the state can meet its burden, for the purpose of proving the accused's possession of unexplained amounts of money, is by showing the accused's impecuniousness before the crime and his sudden affluence afterwards."
C. Gamble, McElroy's Alabama Evidence, § 50.01 (3d ed. 1977) (footnotes omitted); See Leath v. State, 132 Ala. 26,31 So. 108 (1901); Turner v. State, 124 Ala. 59, 27 So. 272 (1900).
The trial court did not err in admitting this evidence. The State met its burden of showing the appellant's sudden increase
in wealth thus giving rise to a fair inference that the money spent by the appellant was obtained as a result of the crime charged. See Leonard v. State, 115 Ala. 80, 22 So. 564 (1896);Martin v. State, 104 Ala. 71, 16 So. 82 (1893).
It was established that the appellant's salary during the time in question was only $6.96 per hour. The appellant and her husband's joint income for the year 1981 was reported as $24,821.23. Although it rose significantly over the next three years, the State established that it would have been impossible for the appellant and her husband to have saved $50,000 during this three-year period in light of the fact that they bought two new cars and made extensive home improvements during this period, in addition to the appellant's many other purchases.
Moreover, although the admission of this evidencealone, as proof of the accused's guilt, may be cause for reversal, where, as here, a substantial amount of other evidence exists to support the appellant's guilt, reversal is not warranted. See Samuel v. State, 455 So.2d 250
(Ala.Crim.App. 1984).
The accountant's testimony in this case verified the scheme used to accomplish the theft at issue. The appellant was shown to be the only employee in the office who possessed the knowledge of the computer necessary to alter these particular accounts. Several of the pairs of bills used in the scheme were found in the appellant's desk drawer. The department manager verified that the group of bills, which included several of the appellant's daughter's, was visible in the appellant's desk when she opened the drawer in front of him at his request. After having found the bills, the department manager found the bottom half of a customer's check in the appellant's garbage can. The amount of the check was higher than the amount which had been run up on the cash register as having been paid by that same customer. See Hicks v. State, 99 Ala. 169, 13 So. 375
(bare possession of money not sole evidence in case).
In Leath v. State, supra, cited by the appellant in her brief, the Alabama Supreme Court held that the admission of testimony that the accused had $45.00 in his possession when he was arrested for forgery constituted reversible error. The court stated,
 "There was no identification at all of the money in defendant's possession when he was arrested as the money paid by the bank on the warrants; nor was there any evidence going in any degree to show that defendant had not legitimately come by this money, as that there were no sources from which he might lawfully have acquired it, but, as we have seen, there was evidence, in no way disputed, that he had received the money from the sale of property and from the county for services to the grand jury. For aught that appears, indeed, he may have been a man of large means. So that the bald proposition involved in the admission in evidence of the testimony of the sheriff that defendant had money when arrested is that defendant was the man who got the money *Page 77 from the bank on the warrants, for that, forsooth, he had some money in his pockets a week or 10 days after somebody had so gotten money from the bank.
We are clear to the conclusion that the one fact had no legitimate tendency to prove the other. To hold otherwise would be to say that there was evidence tending to prove the guilt of this offense of every man in Dekalb county, or elsewhere, for that matter, who a week or 10 days after the commission happens to have more or less money about his person. The proposition was not that this money was a part of that paid out by the bank, for of that there was no evidence, nor that defendant must have gotten this money from the bank, because there was no other source from which he could have got it, for there was no evidence of want of other means of acquiring it, but simply that, having some money, he must have gotten it, or the jury had a right to infer he had gotten it, from the bank by means of the false pretense alleged in the indictment."
Leath, supra, 132 Ala. at 28-29, 31 So. at 109. (emphasis added).
It is clear, upon a close reading of Leath, that the court's decision was based on the lack of proof offered by the State. In the case at bar, however, ample evidence was presented to connect this appellant's spending habits, including the purchase of the CDs, with the crime charged. See also Turner, supra, 27 So. at 275. Cf. Peoples v. State, 56 Ala. App. 290,321 So.2d 257 (1975); (evidence of defendant's possession of money, standing alone, held insufficient to corroborate accomplice's testimony), Davis v. State, 44 Ala. App. 684,220 So.2d 852 (1968), rev'd on other grounds, 283 Ala. 686,220 So.2d 860 (1969) (evidence of defendant's possession of coins held insufficient to corroborate accomplice's testimony).
Further, we note the following:
 " 'As a general rule, great latitude is allowed in the range of the evidence, when the question of fraud is involved. It is indispensable to truth and justice that it should be so; for it is hardly ever possible to prove fraud, except by a comprehensive and comparative view of the actions of the party to whom the fraud is imputed, and his relative position a reasonable time before, at, and a reasonable time after, the time at which the act of fraud is alleged to have been committed. No more precise general rule can be laid down in such cases.' Snodgrass [v. Branch Bank at Decatur], 25 Ala. [161] at 174.
 "Questions of the materiality, relevancy and remoteness of evidence in a fraud case rest largely within the discretion of the trial judge. His rulings on these questions will not be disturbed on appeal unless that discretion has been grossly abused. Dorcal, Inc. v. Xerox Corp., 398 So.2d 665, 671 (Ala. 1981)."
Hinds v. State, 423 So.2d 1382, 1392 (Ala.Crim.App. 1982). See also Peevy v. State, 460 So.2d 248 (Ala.Crim.App. 1984).
 II
The appellant contends that the trial court erred to reversal in allowing the State to cross-examine her character witnesses as to whether or not they "knew, had heard of or would have been surprised to hear of her extravagant spending habits, and accumulation of the CDs." We disagree.
The testimony of the first witness whose cross-examination is called into question is as follows:
 "Q. So. you wouldn't know anything about any certificates of deposit, fifty thousand dollars being accumulated —
 "MR. TIPLER: Judge, that is not about her reputation.
 "THE COURT: I overrule, go ahead with your questioning.
 "Q. Do you know anything, mam, about any certificates of deposits, about fifty thousand dollars that the defendant, Ms. Wiggins, accumulated?
 "A. Why would I? I don't know about your bank deposits.
"Q. I understand completely. Thank you, very much.
"A. All right." (R. 388) *Page 78 
The response by the witness was in the negative, thus, any error was harmless. Wyrick v. State, 409 So.2d 969
(Ala.Crim.App. 1981); Yates v. State, 390 So.2d 32 (Ala.Crim.App. 1980); Houston v. State, 50 Ala. App. 536, 280 So.2d 797 (1973). In addition, we are not convinced that the question was asked in bad faith, as the appellant contends in his brief. SeeHouston, supra.
The appellant argues that the question was asked in the "do you know" form and, therefore, amounted "to an inquiry of the witness's personal knowledge of the accused's alleged misdeeds." While it is true that the proper form of such questions is whether or not the witness has "heard of" the alleged misdeed, Wedgeworth v. State, 450 So.2d 195
(Ala.Crim.App. 1984); Houston, supra, we do not consider the State's use of the "do you know" language in this instance as cause for reversal.
The purpose behind allowing such questions "is not to prove the bad reputation or character of the accused, but to test the credibility of the character witness." Wedgewood, supra, at 196. It is clear that this question was designed to test the credibility of this witness, and was not asked for the purpose of proving the bad character of the accused. Indeed, the subject of the State's inquiry here, the accused's accumulation of the CDs, was an undisputed fact and this fact, in and of itself, was not a "misdeed". Furthermore, the fact of the appellant's accumulation of the CDs had been previously disclosed by the evidence in this cause.
None of the other grounds presented in the appellant's brief was stated at trial, thus, we are not obligated to consider them here. Wyrick, supra.
Our consideration of the appellant's arguments concerning the cross-examination of several of his other character witnesses is precluded due to the fact that they were not properly preserved for review. In each case the appellant failed to raise a specific objection and/or received no adverse ruling in connection with the errors alleged in his brief. Gibbs v.State, 342 So.2d 448 (Ala.Crim.App. 1977); Wood v. State,416 So.2d 794 (Ala.Crim.App. 1982). We hold, therefore, that the trial court committed no reversible error in allowing these questions as asked during cross-examination.
 III
The appellant contends that the trial court erred in denying his motion for mistrial following the prosecution's cross-examination of the appellant in which he asked her if it was "just a coincidence that [she had] gotten wealthy." (R. 592)
 " '. . . [I]t is well recognized that the granting of a mistrial is within the sound discretion of the trial court, for he, being present, is in a much better position to determine what effect, if any, some occurrence may have upon the jury's ability to decide the defendant's fate fairly and justly. And we will not interfere with the trial judge unless there had been a clear abuse of discretion. . . .' "
Retowsky v. State, 333 So.2d 193 (Ala.Crim.App. 1976) (quoting Shadle v. State, 280 Ala. 379, 194 So.2d 538 (1967)). See also Kuczenska v. State, 378 So.2d 1182 (Ala.Crim.App. 1979), cert. denied, 378 So.2d 1186 (1980).
The prosecutor's question was not so prejudicial as to clearly warrant the granting of a mistrial. Furthermore, the nature of the question offered the appellant a chance to explain the source of her wealth which she, in fact, took full advantage of. (R. 594). Having found no clear abuse of discretion in the trial judge's ruling, we find no error requiring reversal here. Kendricks v. State, 378 So.2d 1203
(Ala.Crim.App. 1979).
 IV
The appellant contends that the trial court committed reversible error in allowing two of the State's witnesses, who were the appellant's co-workers during the time of the alleged theft, to testify as to who knew how to adjust the demand accounts on the billing computer. She argues that in allowing the witnesses to testify to the "actual knowledge" of others, the court invaded the province of the jury in violation of the "opinion rule". We disagree. *Page 79 
Clearly, this testimony did not speak to the mental status or operations of the other parties. Cf. Flanagan v. State,369 So.2d 46 (Ala.Crim.App. 1979). The inquiry involved a fact within the witnesses' knowledge, i.e., their co-workers' job qualifications and capabilities. In Flanagan, cited by the appellant, the inquiry was certainly of a different nature. There, we held that a prosecutor's question asking the witnesswhy her husband beat her, called for testimony as to the mental operations of her husband, and its admission was, therefore, erroneous. Such was not the case here. We, therefore, conclude that the trial judge committed no reversible error in this regard.
 V
The appellant contends that the trial judge erred in ordering her to pay restitution in the amount of $89,101.97. She argues that she has "virtually no resources of her own" since her husband is joint owner of the certificates of deposit. She further contends that since her earning potential is fixed and the victim (the City of Andalusia) is financially well-off, the enforcement of the restitution order would constitute an excessive fine and cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. We disagree.
In Ex Parte Clare, 456 So.2d 357, 358 (Ala. 1984), the Alabama Supreme Court stated,
 "[The restitution] statute authorizes restitution to 'fully compensate all victims of [criminal] conduct or activity for any pecuniary loss, damage or injury as a direct or indirect result thereof.' Code 1975, § 15-18-65 (1982 Repl.Vol.). It is clear to us from this new enactment that it is the intent of the legislature that victims be fully compensated through restitution. The Act authorizes restitution by defendant for any 'criminal activity' on his part against the victim. 'Criminal activity' is defined as '[a]ny offense with respect to which the defendant is convicted or any other criminal conduct admitted by the defendant.' Code 1975, § 15-18-66 (1982 Repl.Vol)."
In Clare v. State, 456 So.2d 355, 356 (Ala.Crim.App. 1983), this court held
 "The particular amount of restitution is a matter which must of necessity be left almost totally to the discretion of the trial judge. That discretion should not be overturned except in cases of clear and flagrant abuse."
The trial court's order here did not constitute a clear abuse of discretion. Upon the appellant's conviction, the court was authorized to order restitution of that amount which was the subject of the crime. Ex Parte Clare, supra. Certainly the fact of the appellant's possession, albeit jointly with her husband, of at least $50,000 in CDs lends support to the trial court's decision that the victim in this case should be fully compensated.
The fact that the victim's annual revenues exceed $43 million is of little consequence. We can find no justifiable reason why this appellant should not be responsible for fully compensating the victim. The trial court committed no error in this regard.
For the above-stated reasons, this cause is due to be and is, hereby, affirmed.
AFFIRMED.
All the Judges concur.